No. 28,866.

THE STATE OF KANSAS, *Appellee*, v. P. J. McGINLEY, *Appellant*.

(284 Pac. 384.)

Opinion filed February 8, 1930.

*J. E. Gaitskill*, of Girard, and *C. S. Denison*, of Pittsburg, for the appellant.

*William A. Smith*, attorney-general, *R. O. Mason*, assistant attorney-general, *Thomas D. Winter*, county attorney, and *B. W. Weir*, assistant county attorney, for the appellee; *E. W. Patterson* and *C. A. Burnett*, both of Pittsburg, of counsel.

The opinion of the court was delivered by

BURCH, J.: Defendant, who was a member of the board of directors and cashier of the Frontenac State Bank, was convicted of embezzlement of bank funds, and appeals. The information charged the crime was committed on November 22, 1924, and was concealed by defendant until June 4, 1926, when the bank closed. The prosecution was commenced on July 8, 1927, and the question in the case is whether the prosecution was commenced in time.

Defendant was treasurer of the Neosho Oil Company, which kept an account with the bank. Its account was frequently overdrawn, and frequently overdrawn in large amounts. The Gubbio Coal Company kept an account with the bank. The coal company did not overdraw, and usually had large balances to its credit. On November 22, 1924, Ezzio Fernetti made a deposit for the coal company in the bank of $7,169.22. He made out a deposit slip, gave it to defendant personally with the deposit, and defendant entered the deposit on the coal company's pass book. The bank kept a Boston ledger, and credit items of depositors were posted from deposit slips. Instead of giving the coal company credit for the deposit, defendant gave his oil company credit for the amount on the bank ledger.

On November 20 the oil company was overdrawn $5,677. On

November 22, after the false entry was made on the ledger, the oil company appeared to have a credit balance of $1,560.18. Defendant was forehanded, because a state bank examiner appeared on November 24, and examined the bank.

The board of directors of the bank held its annual meeting on January 10, 1925, and on that day made its quarterly report to the state banking department. The report, which was verified by defendant, listed the resources and liabilities of the bank, and contained the following:

"The above statement was compared with the books of the bank, the notes and other securities were examined, the cash counted, and all found to be correct, with the following exceptions:

"No exceptions."

On May 25 defendant wrote and handed to the assistant cashier, who was his daughter, a slip containing the following:

"Charge Neosho Oil Co., acct. of error in entering deposit, $7,169.22. Credit Gubbio Coal Co., $7,169.22."

The assistant cashier made entries on the ledger accordingly. The result was, the ledger correctly showed the oil company was overdrawn $6,699.26.

On June 13 the bank was examined by a bank examiner who advised the bank its overdrafts were excessive and should be reduced and held to the lowest possible limit. On June 26 the banking department wrote a letter calling special attention to the oil company's overdraft, and directed that the overdraft be collected immediately. On July 9 the oil company's overdraft had increased to $9,967.52. Another quarterly meeting of the board of directors was due on July 10, and on July 10 defendant placed the amount of three fictitious notes, totaling $10,500, to the credit of the oil company. The result was, the oil company appeared to have a credit balance on the bank's ledger of $532.48. On that day a report was made to the banking department showing the oil company was not overdrawn.

When the bank closed on June 4, 1926, the record of its business was fully investigated, with the result the embezzlement was revealed. The action was begun in time if defendant concealed the fact of the crime. (R. S. 62-504.)

The fact of the crime was concealed by a series of subsequent acts of defendant.

As indicated, the deposit of the coal company was regularly entered by defendant on the coal company's pass book. The pass

book was balanced about once a month. Defendant testified that when he had a pass book in the bank and balanced it, the practice was to add deposits and subtract checks, and the balance would be the balance shown by the bank's ledger. The coal company's pass book was balanced by defendant personally in December, 1924, and in February, March and April, 1925. The balances shown were the true balances, and not the false ledger balances. No "error" entry on the pass book was ever necessary, and the fact of the crime was concealed from the depositor who furnished the embezzled money, and who without doubt would have discovered the crime but for the concealment.

Defendant verified the report to the banking department of the January, 1925, quarterly directors' meeting. In his affidavit he stated the bank had no liability not shown on the books of the bank. He knew the bank rested under a liability to the coal company as a depositor in the sum of $7,169.22, not shown by the books of the bank, and the verified report tended to conceal the fact of the crime from the banking department.

On May 25 defendant wrote with his own hand the "error" slip, and caused error entries to be made accordingly in the accounts of the oil company and the coal company, in the ledger. Frequently small errors were made in keeping the books of the bank, and were corrected by error entries. By dealing with the embezzlement as an error, defendant concealed the fact that he had provided his oil company with funds out of bank money.

Of necessity the error entries of May, 1925, exposed the true condition of the oil company's account. The embezzlement escaped detection at the June examination, but the directors were to face the banking department's imperative letter at the July quarterly meeting. If the directors should make a searching examination of the oil company's account, the embezzlement would be disclosed. By means of deposit of the fictitious paper to the credit of the oil company, defendant would be able to show compliance with the banking department's order, and all would be well. The expedient was resorted to, verified report of the quarterly meeting was sent to the banking department, and the crime was effectively concealed for a while longer. It was not discovered until nearly a year had elapsed, when a complete audit, beginning with deposit slips, was made.

Defendant lays stress on the duty of bank examiners to investigate fully the condition of banks, and on the duty of boards of directors to make thorough examination of the books, records, funds and securities of their banks at least four times a year.

The court did not instruct the jury with reference to state examination of banks. No instruction on the subject was requested, and failure to instruct on that subject is not assigned as error. The court instructed the jury fully with respect to the duties of the board of directors; instructed the jury it was necessary, in order to convict, that they should find defendant concealed the offense and the facts of the crime; and instructed the jury with respect to the meaning of the phrase "concealed said offense and the facts of said crime." While there is a blanket charge that the instructions were erroneous, no specific error or insufficiency is pointed out or discussed. In the division of the brief devoted to error in the instructions, the only complaint is that commission of the crime and concealment of the crime were not established by the evidence. Presumably the jury considered the evidence relating to concealment in the light of the court's instructions.

The motion to quash the information was properly denied. The testimony of Fernetti and the pass book of the coal company were properly admitted in evidence. Assignments of error relating to other subjects all have to do, in one way and another, with insufficiency of evidence to go to the jury and to sustain the verdict. The case was properly submitted to the jury, and the verdict was well sustained by evidence.

The judgment of the district court is affirmed.

Jochems, J., not participating.