No. 29,619.

THE STATE OF KANSAS, *Appellee*, v. C. B. WINGETT, *Appellant*.

(16 P. 2d 486.)

Opinion filed December 10, 1932.

*A. E. Crane* and *B. F. Messick,* both of Topeka, for the appellant.

*Roland Boynton,* attorney-general, *E. E. Steerman,* assistant attorney-general, *J. G. Logan,* county attorney, and *Frank E. Miller,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this action is by one of two defendants charged under R. S. 17-1020 as officers and agents of the American Building and Loan Association with conspiracy to defraud and with defrauding the association out of money, property and funds of the association to the amount of $1,600. The appellant herein asked for a separate trial, and he was tried alone and found guilty under the third count of the information, where the $1,600 had reference to a mortgage taken by the association on a certain property on Harrison street in Topeka, Kan., known first as the Gustafson property and later as the Summers property. The errors assigned are the overruling of the motion of defendant for a directed verdict, adverse rulings of the court during the progress of the trial, overruling the motion of defendant for a new trial and the rendering of judgment and sentence against the defendant.

The point relied upon most strongly by the appellant is that the action was barred by the two-year statute of limitations (R. S. 62-503). The state endeavored to avoid the bar of the statute by availing itself of the provisions of R. S. 62-504, which are as follows:

"If any person who has committed an offense is absent from the state, or so conceals himself that process cannot be served upon him, or conceals the fact of the crime, the time of absence or concealment is not to be included in computing the period of limitation."

The information contained the following charge:

". . . that the fact of said crime has been by the defendants and each of them concealed until on or about the —— day of January, 1928."

The information alleged the commission of the crime "on the —— day of March, 1921." The complaint was filed in December, 1928.

The facts with reference to the crime charged, aside from con-

cealing the fact thereof, are that in March, 1921, F. M. Gustafson, the owner of a certain property on Harrison street, in Topeka, Kan., gave a mortgage thereon for $800 to the Topeka Mortgage and Investment Company, which was promptly recorded, and about a month thereafter he conveyed the property subject to this mortgage to Charles Summers, the father-in-law of the appellant. Summers never paid anything on the property nor had anything to do with the purchase thereof. All the negotiations were made by the defendant Wingett. Summers and wife, at the request of defendant Wingett, made application to the American Building and Loan Association, in which both defendants were officers or agents, for a loan of $1,600 on this Harrison street property and signed a note and mortgage therefor. All the checks in payment of the $1,600 loan were issued to or came into the hands of the defendant Wingett. None of them reached Summers or went toward paying off the existing $800 first mortgage on the property. This mortgage was later foreclosed by the Topeka Mortgage and Investment Company, and it is now in possession of the property. The American Building and Loan Association has lost its entire investment of $1,600.

On the other question, of concealing the fact of the crime, the evidence shows that the defendant Wingett procured an extra abstract for the building and loan association instead of getting the one held by the Topeka Mortgage and Investment Company; that he regularly for many years paid the interest on the $800 mortgage; had it extended once when it became due; collected the rents on the property and made the improvements thereon and furnished fire insurance policies with mortgage clauses thereon to the holders of both mortgages. The American Building and Loan Association went into the hands of a receiver on October 7, 1929. On the trial the state called two of the directors of the building and loan association, who testified they never knew of the $1,600 mortgage being a second mortgage or lien contrary to the building and loan specific provisions (R. S. 17-1011) until some time after the receiver took charge. The president of the association, Mr. Courtney, was deceased at the time of the trial. The defendant Wingett and two other directors testified that full return was made to the board of directors of the expenditure of the entire loan of $1,600 by Wingett for improvements and the fact of the $800 mortgage not being paid was freely talked of at the board meetings shortly after the $1,600 loan was made, and there was talk of increasing the loan so as to

pay off the first mortgage. This was in direct conflict with the evidence of the two directors testifying for the state, and the finding of the jury on this necessary element as to concealing the fact of the crime, on which the jury was fully instructed, concludes this court on review, if there was sufficient evidence on the part of the state to sustain the verdict.

Was there sufficient evidence showing that defendant Wingett concealed the fact of the crime? Unless there was, the action is barred by the statute of limitations. The case of *State v. Heinz,* 121 Kan. 547, 247 Pac. 631, shows the distinction between a defendant concealing his connection with a crime known to have been committed and his concealing the fact of the crime itself, and quotes the following from 16 C. J. 230:

"Where the statute precludes accused from availing himself of the limitation in cases where he 'conceals the fact of the crime,' it must appear, in order to prevent the limitation operating in his favor, that he concealed the fact of the crime, and not merely his connection with it, and that the concealment was the result of his positive affirmative acts, designed and calculated to prevent the discovery of the commission of the offense with which he is charged; mere silence and inaction are not enough."

We think the payment of the semiannual interest regularly concealed the crime itself—that of defrauding the association by not paying off the first mortgage and thus making the $1,600 mortgage a second lien and in effect worthless. Likewise the procuring of another abstract instead of getting the one already in the hands of the Topeka Mortgage and Investment Company was a way of avoiding the spread of the information as to there existing two mortgages on the property instead of one; further, the furnishing of two policies of insurance, one for each mortgagee; also, the evidence of the two directors who testified for the state to the effect that the matter was never mentioned to them at any of the meetings of the board. These are, under the rule above quoted, concealments of the fact of the crime itself and not concealments of appellant's connection with the crime. They are all matters subsequent to the commission of the crime and are in no way a part of the crime committed, which was, under R. S. 17-1020, the defrauding of the association of $1,600 of its funds. The getting of another abstract, the payment of the interest and the procuring of an extra fire insurance policy for the Topeka Mortgage and Investment Company were not elements of the crime itself of defrauding the association out of its money. They

were all, except possibly the procuring of the extra abstract, done after the fraud had been consummated. What could have been the motive or intention in paying interest on the $800 mortgage and protecting it with a fire insurance policy other than to conceal the fact of the crime? It is argued by appellant, in line with the testimony of the two directors who testified for defendant, that it was for the purpose of later increasing the loan so as to pay off the first mortgage, but the jury did not give credence to that line of testimony and evidently accepted that in conflict therewith.

Appellant urges that the state failed when it only showed that two of the several directors never heard or knew of this situation, that it was incumbent upon the state to show that none of the directors knew of it, that if the president of the board who filed the complaint and died before the trial knew of it at the time it occurred, the action would be barred. Under the authorities cited they, too, might have been equally guilty of the crime if they knew all about it and did nothing to protect the association, and might have been included in this action as conspirators, as one of the directors is now the other defendant in this action. It is the association or its stockholders that were defrauded and not the directors. Appellant cites *Mo. Pac. Rly. Co. v. Finley,* 38 Kan. 550, 16 Pac. 951, and *Ramsey Petroleum Co. v. Adams,* 119 Kan. 844, 241 Pac. 433, as conclusive if any officer of the association may have known of the fact of the crime. These cases involve the construction of special statutes; the former concerning the sufficiency of a notice to the officers of a train carrying diseased cattle as being notice to the railroad company. The latter was a construction of R. S. 9-164, making officers of a bank civilly liable for receiving deposits when they knew or should have known the bank was insolvent. The case of *State v. McGinley,* 129 Kan. 655, 284 Pac. 384, is more nearly in point, where the cashier of the bank was charged with defrauding the bank and concealing the fact of the crime, and the defendant urged that it was the duty of the board of directors to examine the books of the bank four times a year. The court instructed the jury as to the duty of the officers of the bank, and the jury, it was said, presumably considered the evidence in the light of the court's instructions and that the commission and concealment of the crime were well proved.

In the instant case the court gave the following instruction with reference to a concealment of the fact of the crime:

"In order to constitute a concealment of the crime, it must appear that the defendant concealed the fact of the crime, if a crime was committed, and that the concealment was the result of his positive, affirmative acts, designed and calculated to prevent the discovery of the commission of the offense with which he is charged, if such an offense was committed, and to prevent the operation of the statute of limitations, the concealment must be such as reasonably prevents the discovery of the facts of the commission of the offense, if any, from those who would have a reasonable opportunity to discover the same. If the board of directors of the association or members thereof knew of the fact of the crime, if any was committed, prior to two years before the institution of this prosecution, then it cannot be said that the crime charged in this case was concealed."

Neither the instructions requested on this subject nor the argument of the appellant point out any substantial error in this instruction.

Appellant insists that the public records furnished constructive notice to the officers of the association to acquaint them with the fraud now charged, in that the $800 mortgage remained on record as a first lien and was not released, as it should have been, citing *Black v. Black*, 64 Kan. 689, 68 Pac. 662, and other authorities in support of that view. The failure to place an instrument on record is not necessarily constructive notice of the nonexistence of such instrument, but constructive notice is of the contents of instruments that are placed on record. In the Black case, *supra*, the alleged fraud was discovered from the report of the guardian which had been on record eight years before it was carefully examined by the party complaining. In a very recent case, *Smith v. Rector*, 135 Kan. 326, 10 P. 2d 1077, an aged woman, at the request of a trusted friend, signed a deed thinking it to be an order for an abstract of title to her property and she was bound by the constructive notice afforded by the recording of such deed.

Our statute on constructive notice, R. S. 67-222, provides that—

"Every such instrument in writing, certified and recorded in the manner hereinbefore prescribed, shall, from the time of filing the same with the register of deeds for record, impart notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

Of course the association had constructive notice of the existence of this $800 mortgage at the time it made the $1,600 loan, but the failure to file a release of the mortgage or other instrument is not by this statute made constructive notice of its nonexistence and

failure to pay off the mortgage. The statute makes the recording impart notice of the contents of the instrument recorded. And the extent of the notice is limited to the provisions of the statute.

"The matter of constructive notice from the record is entirely a creation of statute, and no record will operate to give constructive notice unless such effect has been given to it by some statutory provision." (46 C. J. 550. See, also, 23 R. C. L. 216.)

Appellant urges that the burden of proof was on the state to establish the exception to the statute of limitations. That must be conceded, and the instructions given by the court placed it there, and the jury may have given less credence to the testimony of the defendant and the two directors who testified in his behalf than to the testimony of the two directors and others who testified for the state.

We have no difficulty in concluding that there was sufficient evidence to sustain the verdict both as to the commission of the crime charged and also as to concealing the fact of the crime, and therefore there was no error in overruling the motion of the defendant for a directed verdict, or in overruling the motion for a new trial.

The judgment is affirmed.