No. 31,922

THE STATE OF KANSAS, *Appellee*, v. J. LUTHER TAYLOR, *Appellant*.

(38 P. 2d 680)

Opinion
filed December 8, 1934.

*James A. Allen, B. M. Dunham,* both of Chanute, *B. W. Weir,* of Pittsburg, and *E. W. Columbia,* of Parsons, for the appellant.

*Roland Boynton,* attorney-general, *Robert S. Lemon,* county attorney, and *C. S. Denison,* of Pittsburg, for the appellee.

The opinion of the court was delivered by

Smith, J.: Defendant was convicted of embezzlement. He appeals.

For about twenty-five years prior to 1931 the Pittsburg Mortgage Investment Company had been engaged in the farm loan business. Defendant had been connected with that company in different capacities during that time and for some years had been president and managing officer of the company. The principal business of the company was that of taking mortgages from borrowers and loaning money for investors. During the time that defendant was managing officer of the company he dictated letters, waited on customers and examined the bank-deposit slips of the company, his habit being to examine the deposit slips daily when in the office of the company and when he was out of town duplicate slips were sent him. These slips would show the amount of deposits, and the name of the borrower from whom the remittances were received.

The charge in the present case grows out of a loan called the Lewis loan. The Lewis mortgage, in the sum of $3,000, was executed October 4, 1926, and "first mortgage bond" was assigned by the company by defendant to the complaining witness. This assignment was dated November 16, 1926. The maturity date of the instrument was October 1, 1933.

On January 21, 1929, the sum of $1,500 was paid by the borrower on the principal of the Lewis loan. This money was credited to the "loans paid in advance" account and deposited in a bank to the

credit of the Pittsburg Mortgage Investment Company under the direction of defendant.

In May, 1931, the company and defendant both were adjudged bankrupt, and receivers were appointed for them.

In October or November, 1931, the complaining witness learned for the first time that payments had been made on the Lewis loan and not paid to him.

Subsequently the defendant was arrested and charged with embezzlement. He asked for a change of venue. This was denied. He was then tried and convicted. He appealed. The case was reversed on account of the failure of the trial court to grant a change of venue. When the case was sent back to Crawford county another application for a change of venue was made. This was granted. The case was sent to Labette county. There defendant was again tried and convicted. He now appeals from that conviction.

The first two errors of which defendant complains are that his motion to dismiss the case and his objection to the introduction of any evidence should have been sustained. The basis of these two motions was that there was a diminution of the record filed in the district court of Labette county on the change of venue from the district court of Crawford county.

The clerk of the district court of Crawford county sent to the clerk of the district court of Labette county a copy of the (1) information, (2) motion to quash, (3) journal entry overruling motion to quash, (4) petition for change of venue, and removal of cause to another judicial district, (5) journal entry transferring the case from Crawford county to Labette county, (6) amended journal entry transferring the cause from Crawford county to Labette county, sitting at Parsons, (7) copy of recognizance of appellant to appear on the first day of the next term of the district court of Labette county; each of these copies being separately certified to by the clerk of the district court of Crawford county.

The argument of defendant on his motion to dismiss for want of jurisdiction is that the papers above referred to and the separate certification of them was not sufficient to comply with R. S. 62-1333. That section is as follows:

"On the receipt of such transcript by the clerk of the court to which any cause is removed, he shall file the same as a record of his court, and the same proceedings shall be had in the cause in such court, and in the same manner in all respects, as if the same had originated therein."

When this motion was argued to the trial court counsel were asked what additional records or documents defendant desired to have transmitted in order to enable him to more properly make his defense. When counsel did not furnish this information the motion was denied. Thereafter on the 20th of November, 1933, and before the trial, there was filed in the office of the clerk of the court of Labette county the pleadings hereinbefore referred to, bound together with a certificate from the clerk of the district court of Crawford county covering all of the above pleadings. Likewise, on the 20th of November, 1933, there was filed in the office of the clerk of the court of Labette county the complete file, being the original file from the office of the clerk of the district court of Crawford county, with leave from the court to withdraw it at the end of the trial. This file contained every paper filed in this case with the clerk of the district court of Crawford county.

In view of the fact that defendant did not point out just what record he wanted from Crawford county when the motion was argued we are unable to see where the rights of defendant were infringed upon by his being compelled to go to trial on the record sent over. The correct rule is set out in *The State of Kansas v. John W. Foulk*, 59 Kan. 775, 52 Pac. 864; also *The State v. Hibbard*, 76 Kan. 376, 92 Pac. 304. In the latter case the court quotes from the opinion in the Foulk case as follows:

"The clerk of the district court of Kingman county, instead of making out a full transcript and attaching a single certificate thereto, made copies of each of a large number of papers, and attached thereto separate certificates. Among these papers are copies of the information, of the application for a change of venue, and of the order granting the change. This is sufficient to show a transfer of jurisdiction from Kingman county to Harper county. If anything were lacking which the defendant desired to make use of, either on a plea in abatement or bar of the action, or at the trial, on a suggestion of a diminution of the record it would have been the duty of the court to require a transmittal of a full transcript. No such suggestion was made. The attack was at all times on the jurisdiction of the court. This did not depend on the action of the clerk of the Kingman county court. It was not in his power to set aside the order transferring the case to Harper county. It was his duty to make a proper transcript, and this duty he might have been compelled to perform, and it would probably have been error for the court to refuse to require him to do so. But the papers transmitted were sufficient to show that the district court of Harper county had acquired jurisdiction of the case, and apparently all the papers in the case necessary to a trial of it on its merits were before the court, authenticated by the clerk's certificate. A full transcript for the

purposes of a trial was not a necessity, as it is where a superior court is called on to review and reverse the action of an inferior one."

We hold that where, on a change of venue, there is some document missing which defendant deems necessary to the proper making of his defense, the defendant should call the matter to the attention of the trial court, and it is that court's duty to order the production of the document.

Defendant filed a motion for discharge at the close of the state's evidence. Four grounds are urged why it was error to overrule this motion. The first that the evidence of the state failed to show that a crime had been committed; and if a crime was committed, it was committed more than two years preceding the filing of the complaint and the issuance of a warrant; and that the evidence of the state wholly failed to show that the defendant had concealed the facts of the commission of a crime, if a crime had been committed.

The statute with reference to concealment is R. S. 62-504. It is as follows:

"If any person who has committed an offense is absent from the state, or so conceals himself that process cannot be served upon him, or conceals the fact of the crime, the time of absence or concealment is not to be included in computing the period of limitation."

The evidence was that on the 21st of January, 1929, the $1,500 was paid to the company on the Lewis loan. The warrant in this case was issued November 24, 1931. This was more than two years and ten months after the money was paid to the company. Unless prevented by operation of R. S. 62-504 the prosecution of this case was barred by the statute of limitations.

There is no dispute about the rule that mere silence and inaction are not enough to bring a case under that statute. The question of concealment is a matter of fact for the jury. It was submitted to the jury under proper instructions and the verdict of guilty was a finding that there was concealment. If there was any evidence to sustain this verdict it will not be disturbed. We have seen that defendant was the active managing officer of this company. He opened mail, made deposits, dictated letters and tended to other details of the business. The fact that he did not advise Johnson when the payment was made on the loan is a little bit more than mere silence and inaction, in view of the fact that it was his duty to advise Johnson of this payment. This is doubly true in view of the fact that Johnson had told defendant that he did not want to leave any

more money with the company, but wished to handle his own money. The defendant did one act, however, that was an active step toward the concealment of the crime, and that was when he directed the secretary of the company to draw a check for $180, the amount of the interest due on the Lewis loan, and mail it to Johnson at interest-paying time. There could have been no reason for mailing this check except to cause Johnson to believe that his money was still loaned out. This accords with the view taken by this court in the case of *State v. Wingett,* 136 Kan. 436, 16 P. 2d 486. There, in considering a similar situation, this court said:

"They were all, except possibly the procuring of the extra abstract, done after the fraud had been consummated. What could have been the motive or intention in paying interest on the $800 mortgage and protecting it with a fire insurance policy other than to conceal the fact of the crime?" (p. 439.)

Defendant next argues that the motion to discharge should have been sustained because the evidence failed to show that the complaining witness, Richard Johnson, had made a demand, as contemplated by the statutes and the laws of this state, upon the Pittsburg Mortgage Investment Company, or upon J. Luther Taylor, the defendant.

Under the charge against defendant it was necessary that a demand be made upon the agent before the offense would be completed. Here the state proved that Johnson called at the office of the company and there for the first time learned that payments had been made on the Lewis loan. He then called defendant to his house. With a slip of paper in his hand, which contained a notation of the payments, Johnson said:

"You stole my money; what are you going to do about it?"

Defendant said:

"I didn't steal it; it went into the Pittsburg Mortgage account and was checked out."

It is not necessary that a demand for money under circumstances like these should be made in any formal language. It is sufficient if, under the circumstances, the employer make it plain that he believes that the agent has his money and he is expecting it back. What more could Johnson have said? His words, "What are you going to do about it," certainly conveyed to defendant the idea that he wanted his money. In *Babbitt v. Railroad,* 149 Mo. App. 439, the court said:

"The specific word 'demand' need not be used in making such a legal request, but it is sufficient if any words are used which are understood by both parties to be a demand. Furthermore, it has been held that the existence of a demand may be shown by circumstantial evidence or may be inferred from acts and declarations of the parties as proven by direct evidence." (p. 449.)

See, also, *Miller v. Davis*, 88 Me. 454, and *Willis v. Hoover*, 9 Ore. 418.

The defendant next argues that his motion to discharge should have been sustained because the evidence of the state showed that the relation existing between the complaining witness, Richard Johnson, and the Pittsburg Mortgage Investment Company and J. Luther Taylor, if any, was the relation of debtor and creditor; and that on that account what happened would not be embezzlement.

The evidence of the state upon which defendant relies is testimony of Johnson that he knew that it was the custom of the company to pay interest on money that was left with it for investment for the time when it was not loaned out. This question was submitted to the jury, which answered it contrary to the contention of the defendant. On the other side, Johnson testified that at the time the Lewis note and mortgage were assigned he told defendant he did not want to do any more business with him; that he had moved and wanted to do his own business. If the jury believed this evidence it would be sufficient to warrant it in reaching the conclusion that the relationship that defendant bore to Johnson was that of agent.

Defendant next argues that his motion to discharge should have been sustained because the evidence of the state showed that the complaining witness, Richard Johnson, and the Pittsburg Mortgage Investment Company and J. Luther Taylor had made settlement of any indebtedness owing by the Pittsburg Mortgage Investment Company and J. Luther Taylor, if any, to the complaining witness, Richard Johnson.

There is little merit in this argument. The evidence was some property was conveyed to Mr. Johnson by Mr. Taylor, but it was conveyed at a time when Johnson had no knowledge that the payments had been made on the Lewis loan.

At the time when the transfers were made the act constituting the crime of embezzlement had been performed. To give the effect contended for by defendant to this conveyance of property would be to hold that one guilty of embezzlement might make restitution and thus avoid the consequences of his acts. This court has held

that this cannot be done. (See *State v. Pratt,* 114 Kan. 660, 220 Pac. 505, and cases there cited; also *State v. Robinson,* 125 Kan. 365, 263 Pac. 1081.)

Defendant next argues that his motion for a new trial should have been sustained. The ground urged is that three of the jurors made affidavits that it was openly discussed in the jury room during the deliberations of the jury, that the defendant did not testify and that some of the jurors who were voting guilty argued that if defendant had not been guilty he would have testified. The defendant argues that this is evidence of such misconduct of the jury as to entitle him to a new trial. The affidavits are exceedingly general in the allegations set out. The court instructed the jury correctly that the fact that defendant did not testify was not to be considered or construed by them in any manner as affecting the defendant's guilt or innocence in the case. It would be difficult to provide any means of protecting the interests of the defendant any further. To hold that affidavits such as those filed in this case entitle defendant to a new trial would be to permit any juror to impeach the verdict to which he had agreed where the defendant did not testify. This rule might lead to an endless number of new trials. These jurors were not subpœnaed to appear in court on the hearing of the motion for a new trial and give specific information regarding the names of jurors whose vote was influenced by the fact that reference was made to the failure of defendant to testify. It must be remembered that it is the allowing of oneself to be influenced by the failure of defendant to testify, the taking into consideration of the failure, that is forbidden by the statute. On account of the failure of defendant to have the juror in court for examination the court saw fit to deny the motion for a new trial. This amounts to a finding that what the juror stated in the affidavit was not true. In this conclusion the court was justified. In *State v. Dreiling,* 95 Kan. 241, 147 Pac. 1108, this court said:

"In *The State v. Rambo,* 69 Kan. 777, 77 Pac. 563, a juror testified that he mentioned, in the presence of other jurors, the fact that the defendant had failed to testify. Notwithstanding he further testified that the defendant's failure to take the witness stand in his own behalf was not considered by him in arriving at a verdict, a conviction of murder was set aside. The doctrine of that case has never been extended, and the tendency of the court has been to restrict the effect of the decision as far as possible. It has been held in a recent case (*The State v. Brooks,* 74 Kan. 175, 85 Pac. 1013) that where the trial court, after hearing the testimony of jurors to the effect that

they had considered and weighed such testimony, concludes that their statements are not true, there is no ground for enforcing the rule announced in the Rambo case. Under the authority of *The State v. Brooks*, supra, we approve the ruling of the trial court, . . . and the judgment will be affirmed." (p. 245.)

The rule that jurors will not be permitted to impeach their verdicts has been announced in other cases. In *State v. Buseman*, 124 Kan. 496, 260 Pac. 641, the juror made an affidavit that a statement not introduced in evidence affected the verdict. The court denied the motion for a new trial and this court approved the action, and said:

"It is a general rule, founded on sound public policy, that jurors are not permitted to impeach a verdict to which they have deliberately agreed under the sanction of an oath. There would be little virtue or finality in verdicts if they could be impeached and overthrown by the evidence of dissatisfied or unduly influenced jurors. It has been said that: 'It would result in perjury and bribery and there would be no end of litigation in cases tried before juries.'" (p. 499.)

See, also, *State v. Casebier*, 130 Kan. 762, 288 Pac. 736. The motion for a new trial was properly overruled.

The judgment of the trial court is affirmed.