Nos. 64,875 & 64,876

STATE OF KANSAS, *Appellant*, v. JOHN E. PALMER, ELLIOT M. KAPLAN, and DAVID C. OWEN, *Appellees*.

(810 P.2d 734)

Opinion filed April 17, 1991.

*Michael A. Barbara*, special assistant attorney general, of Topeka, argued the cause, and *Thomas D. Haney*, special assistant attorney general, of Topeka, and *Robert T. Stephan*, attorney general, were with him on the briefs for appellant.

*Bruce C. Houdek,* of James, Millert, Houdek, Tyrl & Sommers, of Kansas City, Missouri, argued the cause and was on the brief for appellee John E. Palmer.

*Ellen Yankiver Suni,* of UMKC School of Law, of Kansas City, Missouri, argued the cause, and *William R. Coffee,* of Olathe, and Elliott M. Kaplan, pro se, were with her on the brief for appellee Elliot M. Kaplan.

*James L. Eisenbrandt,* of Linde Thomson Langworthy Kohn & Van Dyke, P.C., of Overland Park, argued the cause, and *Barbara W. Foster,* of the same firm, was with him on the brief for appellee David C. Owen.

The opinion of the court was delivered by

LOCKETT, J.: An inquisition conducted by the Kansas Attorney General's specially appointed prosecutors pursuant to K.S.A. 22-3101 *et seq.* to investigate alleged violations of the Campaign Finance Act, K.S.A. 25-4142 *et seq.* resulted in separate criminal complaints being filed against defendants David C. Owen, Elliot M. Kaplan, and John E. Palmer. Owen was charged with seven felony counts in case K-61870: four counts of theft, one count of conspiracy to commit theft, one count of making a false writing, and one count of criminal solicitation. In addition, he was charged with 11 misdemeanor counts: one count of making excessive campaign contributions, one count of conspiracy with Palmer to make an excessive campaign contribution; and nine counts of making a campaign contribution in the name of another. Kaplan was charged with two felony counts in case K-61869: one count of theft and one count of conspiracy to commit theft. Palmer was charged in case K-61871 with one misdemeanor count of conspiracy with Owen to make excessive campaign contributions. A motion to consolidate cases K-61869 and K-61870 was granted November 27, 1989.

A preliminary examination was scheduled to determine whether there was cause to bind over Owen and Kaplan on the felony charges. Prior to Owen's and Kaplan's preliminary examination, the parties stipulated that if the district judge found that the statute of limitations barred prosecution of the felony charges, prosecution of the misdemeanor charges against Owen and Palmer would also be barred. Because of the agreement to include the misdemeanor charges, after the evidence had been submitted,

the State also argued facts alleged in the affidavit for the warrant on the misdemeanor charges.

After the State had presented its evidence in the preliminary examination the district judge (1) found there was no evidence the alleged felonies had been committed; (2) held the prosecution of the felonies and the misdemeanors alleged in the complaints was barred by the statute of limitations, K.S.A. 21-3106(3); and (3) dismissed the complaints against the defendants. The State appealed pursuant to K.S.A. 22-3602(b)(1).

## STATUTE OF LIMITATIONS

K.S.A. 21-3106(3) requires that prosecution of the offenses alleged against the three defendants must be commenced within two years after the alleged offenses were committed. The State alleged that the illegal acts occurred between September 16, 1986, and December 29, 1986. The criminal complaints against the defendants were filed on October 31, 1989, approximately three years after the alleged offenses occurred. The State admits that the charges were not commenced within the statutory two-year period but claims that the two-year limitation for prosecution was tolled by K.S.A. 21-3106(4)(c) because the defendants concealed the fact that a crime had been committed.

## CONCEALMENT

Statutes of limitation are favored in the law and are to be construed liberally in favor of the accused and against the prosecutor. *State v. Bentley*, 239 Kan. 334, 336, 721 P.2d 227 (1986); *State v. Mills*, 238 Kan. 189, 190, 707 P.2d 1079 (1985). Exceptions to the statute are to be construed narrowly or strictly against the State. *Bentley*, 239 Kan. at 336; *Mills*, 238 Kan. at 190.

"Unless the statute of limitations contains an exception or condition that will toll its operation, the running of the statute is not interrupted. . . . Under statutes so providing, there may be deducted from the period of limitation the time during which the accused . . . conceals the fact of the crime. However, to suspend the operation of the statute the concealment of the fact of a crime must be the result of positive acts done by the accused and calculated to prevent discovery; mere silence, inaction, or nondisclosure is not concealment. [*State v. Watson*, 145 Kan. 792, 67 P.2d 515 (1937).] Thus, for example, a loan officer's failure to inform an investor in the lending business of a principal payment on a mortgage loan was more than mere silence and inaction, and his instruction to the company secretary to pay the regular amount of interest to the investor to cause him to believe the

principal was still loaned out constituted an active step toward the concealment of the crime of embezzlement where the investor has previously expressed his desire not to leave any more money with the loan company." 21 Am. Jur. 2d § 227.

K.S.A. 21-3106 sets out the various time limitations within which a prosecution must be commenced. The offenses alleged here by the State require the prosecution to begin within two years after they were committed. The period within which the prosecution must be commenced does not include any period during which the fact of the crime is concealed. K.S.A. 21-3106 (3), (4)(c).

The State contends that the trial court erred in finding there was no concealment of the alleged crimes by the defendants. Before determining whether the defendants concealed the fact that the alleged crimes were committed, we will first review prior Kansas cases that discuss the issue of concealment and the tolling of the statute of limitations.

In Kansas, concealment has been applied mainly in embezzlement or theft/larceny cases. One of the earliest cases discussing concealment and determining the statute of limitations was not tolled is *State v. Heinz*, 121 Kan. 547, 247 P.2d 631 (1926), which dealt with larceny of a surveyor's transit. In *Heinz*, the State relied on R.S. 1923, 62-504, the predecessor to K.S.A. 21-3106(4)(c), which provided that, if any person "conceals the fact of the crime, the time of absence or concealment is not to be included in computing the period of limitations." *Heinz*, 121 Kan. at 548. In *Heinz*, the larceny was committed on February 23, 1921; the transit was known to be missing the next day, but the item was not seen again until 1925 when it was found in the defendant's possession. The defendant claimed that there was no evidence that he had concealed the crime; therefore, the statute of limitations prevented the State from prosecuting him for the larceny. The *Heinz* court noted that the defendant's secretion of the item did not conceal the fact that it had been stolen. The court stated that for concealment to toll the statute of limitations, some positive affirmative acts designed to prevent the discovery of the commission of the offense was needed and not mere silence or inaction. *Heinz*, 121 Kan. at 548. It determined that the statute of limitations precludes an accused from availing himself of the

defense where he conceals the fact of the crime. To prevent the limitation from operating in the defendant's favor, he must have concealed the fact of the crime and not merely his connection with the crime. The concealment must result from the defendant's affirmative act, designed and calculated to prevent discovery of the commission of the offense with which he is charged; mere silence is not enough.

In *State v. Watson*, 145 Kan. 792, 67 P.2d 515 (1937), a justice of the peace in 1930 embezzled money he collected as a fine from the sale of a car. The information filed September 25, 1935, alleged that ever since the commission of the offense the justice of the peace had continuously concealed the fact of the crime. After reviewing the statute of limitations, G.S. 1935, 62-503, the *Watson* court noted that concealment must be action or conduct by the accused which is calculated to prevent discovery of the crime and mere silence, inaction, or nondisclosure is not enough. *Watson*, 145 Kan. at 794. There was no tolling of the statute of limitations in *Watson* because the magistrate did not make statements or do any acts to conceal the conversion of money; he just took the money. The magistrate's mere silence, inaction, or nondisclosure of the taking was not sufficient to toll the statute of limitations.

In *State v. Gainer*, 227 Kan. 670, 608 P.2d 968 (1980), the defendant stole guns from his neighbor's attic in January 1977. The theft was not discovered until April 1979. A theft charge was filed. At the preliminary examination the defendant claimed that the statute of limitations barred prosecution of the theft. The defendant did testify that after taking the guns he hid them in his attic for six months. The magistrate observed that the defendant concealed the crime for six months by his act of hiding the guns in the attic. The magistrate found the two-year statute of limitations was tolled during the six months that the defendant had hidden the guns; therefore, even though the information was filed more than two years after the offense was committed, the prosecution was timely. Though the prosecution was not time barred, the magistrate dismissed the complaint and referred the defendant to the juvenile authorities because the defendant was 17 when the alleged offense was committed. The State appealed, claiming that when the crime was discovered, the defendant was

no longer a juvenile and should be prosecuted as an adult because the crime of theft is a continuing offense and prosecution was not barred by the statute of limitations.

The *Gainer* court first determined that the crime of theft as described in K.S.A. 21-3701(a) is not a continuing offense. To constitute a continuing offense it must plainly appear in the statute defining such offense that there is a clear legislative intent to make the prohibited course of conduct a continuing offense. The court then observed that hiding or disposing of stolen property by a thief does not constitute concealment of the fact of the crime. It noted that to constitute concealment of the fact of the crime of theft sufficient to toll the statute of limitations there must be a positive act done by or on behalf of the accused calculated to prevent discovery of the theft by those owning or having possession of the property prior to the theft. *Gainer*, 227 Kan. at 674. The court stated that silence, inaction, or nondisclosure is not concealment of the crime as required for tolling of the statute of limitations. The *Gainer* court noted the magistrate was correct in dismissing the criminal charges, although he did so for the wrong reason, and affirmed the dismissal of the charge.

In *State v. Bentley*, 239 Kan. 334, we determined that there can be no tolling of the statute of limitations unless the accused's statements or conduct was calculated and designed to prevent discovery of the crime charged; mere silence, inaction, or nondisclosure is not enough. 239 Kan. at 337. In *State v. Mills*, 238 Kan. 189, this court held that, to toll the statute of limitations due to the concealment of the crime through the acts and statements of a third party, "there must be some positive action by the accused along with a direct connection between the accused and the third party which results in the concealment." 238 Kan at 190-91.

We have recognized that affirmative acts that conceal the fact a crime was committed toll the statute of limitations. In *State v. Wingett*, 136 Kan. 436, 16 P.2d 486 (1932), Wingett, a loan officer, was charged with defrauding a loan association of the amount of a loan made to one of the defendant's relatives. The crime was committed in March 1921 and the complaint was not filed until December 1928. The State relied on R.S. 1923, 62-504 to toll the two-year limitation for prosecution. The *Wingett* court found

that the defendant's regular payment of interest due on the note for several years and his obtaining an extra fire insurance policy, obtaining another abstract, and having the mortgage renewed were affirmative acts of concealment, which tolled the statute of limitations.

In *State v. Taylor*, 140 Kan. 663, 38 P.2d 680 (1934), the managing officer of a mortgage investment company, who was actively involved in the running of the business, concealed the fact that he had embezzled a $1,500 loan payment when he directed the secretary of the company to issue a check to the lender for $180, the amount of the interest due on the loan. The court noted that there was no reason for the defendant to cause the mailing of the interest check to the lender except to cause the lender to believe that his money was still on loan. The *Taylor* court determined that the mailing of the interest check by the defendant was an active step toward the concealment of the crime, which tolled the statute of limitations. 140 Kan. at 668.

In *State v. McGinley*, 129 Kan. 655, 284 Pac. 384 (1930), the defendant, a member of the board of directors of a bank, appealed his conviction of embezzlement of bank funds. The information charged the defendant with embezzlement in November 1924. The loss was discovered when the bank was closed on June 4, 1926. Prosecution commenced in July 1927, more than two years after the alleged act. The defendant was also an officer of an oil company that had an account with the bank. The defendant credited the bank's clients' deposits to his oil company account. By use of creative accounting with an "error entry" the defendant was able to conceal the fact that he was providing his oil company with money from other clients of the bank. The defendant argued that if the bank examiners and the board of directors had performed their duty, the crime would have been detected immediately; therefore, because the examiners and the bank officials had failed to do their duty, the statute of limitations barred prosecution for the embezzlement. We disagreed and found that the facts of the crime had been concealed from the depositors whose money had been embezzled by the defendant.

In *State v. Grauerholz*, 232 Kan. 221, 654 P.2d 395 (1982), the defendant, an attorney, was charged with two counts of felony theft based on shortages of funds in two estates of which he was

the executor. Funds belonging to one estate were deposited in either the defendant's own account or his law office account. From February 1975 through February 1979 defendant wrote, signed, and negotiated various checks upon the other estate's trust account. Relying on the rationale of *Gainer*, Grauerholz argued that he did not conceal the fact of the thefts. This court found the defendant's pattern of conduct was to conceal the fact that the crimes had been committed. We noted *inter alia* that the defendant's preparation and execution of checks from the estate trust account in a secretive manner with incomplete and inaccurate accounting records was more than "mere silence, inaction, nondisclosure, or disposal of the stolen property"; therefore, the two-year statute of limitation was tolled by the defendant's active concealment of the crimes. 232 Kan. at 228.

## THEFT AND CONSPIRACY TO COMMIT THEFT

In order to bind a defendant over for arraignment and trial, the State must present evidence at the preliminary examination sufficient to show that it appears a felony crime was committed and that probable cause exists to believe the defendant committed the crime. Probable cause at a preliminary hearing signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of accused's guilt. *State v. Puckett*, 240 Kan. 393, Syl. ¶ 1, 729 P.2d 458 (1986).

After reviewing the record of the preliminary examination, we find the charges of theft and conspiracy to commit theft against Owen and Kaplan are separate and distinct from the alleged violations of the Campaign Finance Act. We must therefore review those charges and the effect of the statute of limitations separately from the alleged violations of the Campaign Finance Act. For purposes of the appeal, we assume the facts to be true. Whether the facts are true is for the trier of fact to determine.

## KAPLAN'S THEFT AND CONSPIRACY CHARGES

The State contends that on October 15, 1986, Kaplan unlawfully obtained $6,000 from AmVestors Marketing, Inc., (AmVestors) for legal services that he never performed. The State asserts that the corporation books and records do not indicate that Kaplan had performed the services or had invested in AmVestors; there-

fore, Kaplan had no legal right to the money, *i.e.*, Kaplan must have stolen the money.

In addition, the State alleges in Count 2 of the complaint that Owen and Kaplan unlawfully, willfully, and feloniously conspired to commit the crime of theft charged in Count 1. The State contends that Kaplan and Owen caused AmVestors to issue the $6,000 check to Kaplan.

### OWEN'S THEFT AND CONSPIRACY CHARGES

The State claims the three thefts (Counts 1-3) occurred on December 9, 22, and 29, 1986, when Owen caused AmVestors to issue checks to Owen and Associates, Inc., in the amount of $2,000, $3,000, and $5,000 for refund of consulting fees. The State alleged that Mark Crow, who was an employee of Owen and a corporate officer of AmVestors, refunded the consulting fees to Owen and Associates at the direction of Owen. The State asserts that there is no evidence that Owen and Associates was entitled to the refund of the consulting fees.

In Count 4, the State alleged that on September 16, 1986, Owen wrote a check to his wife from Kansas Microwave, Inc., for consulting fees for services which she never performed. Owen then endorsed his wife's name to the check and deposited it to her account. The State charged Owen with stealing funds belonging to Kansas Microwave.

In Count 6-7 of the complaint the State alleged that Owen solicited and conspired with Kaplan to commit the crime of theft on October 15, 1986, when Owen illegally caused AmVestors to issue a check for $6,000 to Kaplan. This is the same act charged in Count 2 of the complaint against Kaplan.

The district judge determined that the crimes of theft and conspiracy to commit theft were not continuing offenses. He noted that transactions alleged to have been thefts had been recorded in the books and records of the corporations. The books and records had not been altered by or at the request of the defendants and have been available for any officer or stockholder of the corporations to examine since October 1986. The district court found that there was no act by Kaplan and Owen to conceal the fact that they had received the money from the corporations;

therefore, the two-year statute of limitations barred prosecution of the alleged thefts and conspiracies to commit theft.

All criminal offenses, except those considered continuing offenses, are committed when every act which is an element of the offense has occurred. Continuing offenses are committed when the course of the prohibited conduct, or the accused's complicity in the crime, has terminated. To constitute a continuing offense, it must plainly appear in the statute defining such offense that there is a clear legislative intent to make the prohibited conduct a continuing offense. The crime of theft as proscribed in K.S.A. 21-3701(a) is not a continuing offense. *State v. Gainer*, 227 Kan. 670, Syl. ¶ 2.

A conspiracy is an agreement with another person to commit a crime or to assist to commit a crime. No person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by him or a coconspirator. Conspiracy is not a continuing offense. The fact that the conspirators agree to be silent after the crime has been committed does not constitute concealment so as to toll the statute of limitations. *Grunewald v. United States*, 353 U.S. 391, 1 L. Ed. 2d 931, 77 S. Ct. 963 (1957). The crime of conspiracy as proscribed in K.S.A. 21-3302 is not a continuing offense.

Neither theft nor conspiracy to commit theft were intended by the legislature to be a continuing offense. Since theft and conspiracy to commit theft are not continuing offenses, the State is required to commence prosecution of the offenses within two years of the commission of the crime unless an accused has concealed the fact of the crime. To constitute concealment of the fact of the crime of theft sufficient to toll the statute of limitations, there must be a positive act done by or on behalf of the accused calculated to prevent discovery of the thefts by those owning or having possession of the property before the theft. Mere silence, inaction, nondisclosure, or disposal of the stolen property is not concealment of the fact of the crime as contemplated in K.S.A. 21-3106. *State v. Gainer*, 227 Kan. at 674-75.

Because there was no evidence that the defendants concealed the alleged thefts or conspiracy to commit theft, the district judge was correct in determining that prosecution of those offenses is barred by the statute of limitations. Since the prosecution is time

barred, we are not required to determine if the district judge correctly determined the alleged crimes of theft and conspiracy to commit theft had not been committed.

## MAKING A FALSE WRITING

It is a fundamental rule that a penal statute must be strictly construed in favor of the person sought to be subject to its operation. The rule of strict construction simply means that ordinary words are to be given their ordinary meaning. Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it. *State v. Vakas*, 242 Kan. 103, Syl. ¶ 1, 744 P.2d 812 (1987). A criminal statute cannot be extended by courts to embrace acts or conduct not clearly indicated within its prohibitions. *State v. Doyen*, 224 Kan. 482, 488, 580 P.2d 1351 (1978).

K.S.A. 21-3711 states:

"Making a false writing is making or drawing or causing to be made or drawn any written instrument or entry in a book of account with knowledge that such writing falsely states or represents some material matter is not what it purports to be, and with intent to defraud or induce official action."

A report of receipts and expenditures is required to be filed by the treasurer of a candidate's campaign committee pursuant to K.S.A. 25-4148 of the Campaign Finance Act. The State's theory is that Owen had violated the false writing statute (count 5) by causing Ray Higley, Mike Hayden's gubernatorial campaign treasurer, to prepare and file an inaccurate receipts and expenditures report with the Secretary of State.

K.S.A. 25-4168 states that fraudulent campaign finance reporting is the intentional making of any false material statement in a report or statement made under the Campaign Finance Act. Ray Higley testified that he had never spoken with Owen and that Owen had no involvement in the compilation, filing, or preparation of the contributions and receipts report. The trial court dismissed the charge, finding that there was no evidence that Owen had anything to do with causing Hayden's campaign to make the receipts and expenditures report.

Owen claims, and the district judge agreed, that the State improperly charged Owen under a general criminal statute, mak-

ing a false writing, K.S.A. 21-3711, rather than the specific statute for making a false campaign report, K.S.A. 25-4168.

As authority, Owen cites *State v. Kliewer*, 210 Kan. 820, 504 P.2d 580 (1972), where the defendant, who had turned back an odometer, was convicted of two misdemeanors: (1) turning back the odometer used for registering the mileage on a motor vehicle, in violation of K.S.A. 1971 Supp. 8-611(b), and (2) committing a deceptive commercial practice, in violation of K.S.A. 1971 Supp. 21-4403. The defendant appealed. The *Kliewer* court pointed out that both crimes of which the defendant was convicted pertained to deception, fraud, and misrepresentation of a material fact. The court noted that where there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute will be favored over the general statute and controls. 210 Kan. at 826-27. It determined where a person is charged with and convicted of unlawfully turning back the odometer of an automobile, the specific statute, he cannot also be charged with and convicted of committing a deceptive commercial practice, a general statute, for the same wrongdoing. Kliewer's conviction for committing a deceptive commercial practice was set aside. We agree with the reasoning in *Kliewer*, but do not agree with Owen's claim that *Kliewer* implies he should have been charged with violating 25-4168 rather than 21-3711.

We note that under the rationale of *State v. Doyen*, 224 Kan. 482, Owen could not be charged with violating 25-4168. In *Doyen*, the defendant, a senatorial candidate, was alleged to have intentionally caused his treasurer to file a false report by withholding contributions from his treasurer. The State charged the candidate with three counts of fraudulent campaign finance reporting in violation of K.S.A. 1977 Supp. 25-4129, now 25-4168. The district court found that the complaint and supporting affidavit were insufficient and dismissed the complaint. The State urged that, although the candidate did not file a report containing any false material statement, he caused his campaign treasurer to file a false report by withholding certain contributions from his treasurer. We analyzed the legislative history of the statute and found that the legislature had intentionally omitted the "causing to be filed" language that is seen in other criminal statutes

and which was not included in the definition of the crime set forth in K.S.A. 1977 Supp. 25-4129. *Doyen*, 224 Kan. at 488. This court said if the legislature had intended to make it a crime for the candidate to cause his treasurer to file a false report, it could easily have done so.

In *State v. Kee*, 238 Kan. 342, 350, 711 P.2d 746 (1985), the defendant, an officer and shareholder in a bank, had received substantial loans from the bank and, consequently, was unable to obtain additional loans from the bank. To complete the purchase of an oil and gas lease, Kee induced the seller of the lease to sign a note with the bank. The seller received $25,000, completing the purchase. Kee promised the seller he would pay the principal and interest. Kee failed to make the payments. To hide the fact that the note was due and unpaid from the bank examiners, Kee had another person sign the seller's name to an extension of the note. This act caused the bank examiners to file a false report. The *Kee* court found that the defendant had caused a false writing which had induced official action and upheld the conviction under K.S.A. 21-3711.

To commit the crime of making a false writing one must have the intent to defraud or induce official action pursuant to K.S.A. 21-3711. The knowing delivery of the false document to the official who is intended to be induced to act is a type of participation that indicates an intent by the person making the delivery to further the success of the person making the false writing. *State v. Reineking*, 10 Kan. App. 2d 630, 633, 706 P.2d 483, *rev. denied* 238 Kan. 879 (1985).

To hide his alleged illegal campaign contribution, Owen delivered the checks to one of Hayden's campaign personnel. The recording of the checks given by Owen caused Hayden's treasurer, who was required by law to report the contributions, to make a false writing. The trial court incorrectly ruled that making a false writing, K.S.A. 21-3711, did not include the action by Owen.

Since Owen was properly charged by the State with making a false writing with the intent to induce official action, there still remains the question of whether the prosecution for this act is barred by the statute of limitations. That question will be decided

by our review of the alleged violations of the Campaign Finance Act.

## VIOLATIONS OF THE CAMPAIGN FINANCE ACT

Under the Campaign Finance Act it is illegal for a person to make a contribution in the name of another. K.S.A. 25-4154. The aggregate amount that may be contributed for the primary or general election to a candidate and the candidate's committee for the office of governor and lieutenant governor is $3,000. K.S.A. 25-4153. Any person who intentionally exceeds that limitation is subject to prosecution for a misdemeanor. K.S.A. 25-4170.

The State alleges that Owen contributed more than $3,000 to Governor Hayden's campaign by contributing money in the name of another. It also alleges that Owen and Palmer conspired to make an excessive campaign contribution. All of the alleged violations of the Act are misdemeanors.

Based on October 1986 conversations between Owen and members of Mike Hayden's gubernatorial campaign, Owen agreed to raise approximately $25,000 in campaign contributions. On October 14, 1986, a meeting was held at Phillip Billard Airport in Topeka to thank Owen for his efforts in raising the campaign contributions, to collect the contributions, and to give Owen the opportunity to introduce Paul Bryant, Jr., to Mike Hayden. During the meeting, Owen gave John Petersen, a fundraiser for the Hayden campaign, an envelope containing several checks totalling $32,000.

As a result of his conversations with Owen and the meeting with Hayden, Bryant agreed to retain Owen to assist him in obtaining a license to operate a parimutuel race track in Kansas. Bryant wrote a check payable to Owen and Associates for $100,000 on the account of AIM, Inc. The computerized ledger sheet of Owen and Associates indicates a $50,000 cash receipt for a consulting fee from AIM, Inc., on October 15, 1986, and a $50,000 cash receipt on a note payable from AIM, Inc., on October 15, 1986.

On October 15, 1986, the following checks were recorded and reported as required by the Campaign Finance Act: Owen and Associates, David C. Owen, John Palmer, E.D.P. Enterprises, Inc. (EDP), Eagle Distributors, Inc., Kansas Microwave, Mark

Crow, Sara Cedarholm, Richard Halford, Dee Halford, and AmVestors. All of the checks were in the amount of $3,000 except for EDP's check for $2,000, Owen and Associates check for $500, and Owen's check for $1,500. With these contributions EDP, Owen and Associates, and Owen reached their maximum allowable contributions of $3,000. On October 16, 1986, Elliot and Jeanne Kaplan's checks for $3,000 each were recorded. The total of the alleged illegal contributions recorded between October 15-16 is $28,000.

The State argues that the $28,000 is actually an illegal campaign contribution made by Owen by using other individuals who did not actually contribute their money and a violation of K.S.A. 25-4154, K.S.A. 25-4170, and K.S.A. 25-4171. The State alleges that Owen concealed the illegal contribution by a series of entries in the books and records of AmVestors, EDP, Kansas Microwave, Eagle Distributors, and Owen and Associates, and acts of other individuals. The State asserts that corporation checks issued between October 15-16 to various individuals and corporations are reimbursements from Owen to those who had previously allowed Owen to use their identity. In essence, the State argues that through a scheme of checks and accounting entries Owen used the corporations and individuals to conceal his illegal contributions into the gubernatorial campaign.

Owen is a corporate officer of three of the corporations and has business relations with AmVestors and EDP. All of the checks written by individuals and delivered by Owen for the gubernatorial campaign are from employees and officers of the corporations associated with Owen and their wives. To understand the State's allegations, it is necessary to examine the corporate structure and operations of these corporations and then trace the various transactions.

## 1. AMVESTORS

A Kansas corporation formed to market single premium annuities and single premium life insurance policies of American Life Insurance Company to securities dealers.

Richard Halford, president and sole stockholder;
Elliot Kaplan, secretary;
Mark Crow, treasurer.

Sara Cedarholm and Mark Crow, employees and friends of Owen, handled the daily operation of the corporation and had authority to write its checks.

### 2. KANSAS MICROWAVE
An electronics development corporation.
 Charles A. Ross, president;
 David Owen, chief financial officer.
Owen maintained the books and records of the corporation.

### 3. EDP
 John Palmer, president;
 Sara Cedarholm, treasurer;
 Elliot Kaplan; secretary.
Mark Crow handled the payroll, banking, accounting, and financial reporting of the corporation.

### 4. EAGLE DISTRIBUTORS
 David Owen, president.

### 5. OWEN AND ASSOCIATES
A Kansas corporation whose sole stockholder is David Owen.
 David Owen, president;
 Mark Crow, secretary;
 Sara Cedarholm, treasurer.

All of the corporations were located in the same building. Owen's employees maintained the books and records for all of the corporations in Owen's office.

The State's theory is that $28,000 of the $32,000 in contributions delivered by Owen on October 14, 1986, was illegally reimbursed by Owen between October 15-16, 1986, when he caused Owen and Associates to issue checks totaling $32,000 to the four corporations. The corporations, after they were reimbursed their alleged $11,000 contributions, issued checks totaling $21,000 to reimburse the individuals who had contributed to the Hayden campaign. The alleged reimbursement actions occurred as follows:

### TRANSACTION I
Owen and Associates on October 15, 1986, issued an $11,000 check to EDP.

EDP was reimbursed for its October 14, 1986, $2,000 contribution. (Count 14.)

EDP issued checks on October 15 and 16, 1986, to:

| | | |
|---|---|---|
| Sara Cedarholm | $3,000 | (Count 9) |
| Mark Crow | $3,000 | (Count 10) |
| John Palmer | $3,000 | (Count 13) |

The total campaign contributions from the corporation, Cedarholm, Crow, and Palmer equalled $11,000. The $11,000 check to the corporation equals the contribution, and the subsequent disbursement reimbursed the corporate and individual donors for the amounts each contributed.

### TRANSACTION II

Owen and Associates on October 15, 1986, issued a $15,000 check to AmVestors.

AmVestors is reimbursed for its October 14, 1986, $3,000 contribution. (Count 16)

AmVestors issued checks on October 15, 1986, to:

| | | |
|---|---|---|
| Richard Halford | $6,000 | (Count 8) |
| Elliot Kaplan | $6,000 | (Count 11 and 12) |

(The $6,000 check is the basis for the felony theft and conspiracy to commit theft charges against Owen and Kaplan previously discussed.)

The total campaign contributions from the corporation, Richard Halford, Dee Halford, Elliot Kaplan, and Jeanne Kaplan equalled $15,000. The $15,000 check to the corporation equals this total donation. The subsequent disbursement reimbursed the corporate and individual donors for the amounts contributed.

### TRANSACTION III

Owen and Associates on October 16, 1986, issued a $3,000 check to Eagle Distributors to reimburse it for its $3,000 contribution on October 14, 1986. (Count 15)

### TRANSACTION IV

Owen and Associates on October 16, 1986, issued a $3,000 check to Kansas Microwave to reimburse it for its $3,000 contribution on October 14, 1986. (Count 17)

On December 12, 1987, a newspaper article by Dale Goter, a reporter, was published. The newspaper article indicated that Owen may have made excessive campaign donations to the Hay-

den campaign. An informal investigation by the Kansas Public Disclosure Commission began on January 5, 1988. The Disclosure Commission's administrative and criminal investigation hearings were conducted from September to October 1989. On October 31, 1989, the State filed separate criminal complaints against Owen, Kaplan, and Palmer.

The defendants argue that, although the alleged crimes charged by the State are difficult to detect, that fact did not relieve the State of its burden of bringing the charges within the two-year statute of limitations. The defendants claim that the State failed to produce evidence of any overt acts by the defendants which occurred after October 1986. In addition, the defendants contend that the State is now trying to make violations of K.S.A. 25-4170 and K.S.A. 25-4154 continuing crimes. The defendants claim that, even if the contributions were illegally funneled through the various individuals and corporations, the entries were completed more than two years prior to the State commencing prosecution and, thus, prosecution for the alleged offenses is barred.

The district judge first determined that the alleged crimes were not continuing offenses. We agree with that determination. The judge, after acknowledging that there may have been misuse or perhaps laundering of funds going through the various corporations and individuals, determined that these acts were not done to conceal the fact that the crimes had been committed. We disagree with that decision.

There is evidence that Owen designed and executed a scheme calculated to prevent the discovery of his ties to the contributions made by the corporations and other individuals. On the surface the reports required by the Campaign Finance Act indicated legal contributions by those individuals and corporations and concealed Owen's illegal contributions. Owen had daily control over all of these corporations, whose books were kept in Owen's office and maintained by his secretary and his accountant at his direction. Owen used entries in corporate books, checks issued by the corporations, and checks of other individuals to conceal the fact that he was making the contributions. The State contends the entries in the corporate books for legal fees, advance commission checks, refund of consulting fees, and promissory notes were mere illusions to make the conduct appear as normal, legal business

transactions and concealed the fact that the money had actually been contributed to Hayden's campaign by one person, Owen. The net result, according to the State, was that the checks as delivered and recorded and reported by Hayden's campaign prevented discovery of Owen's illegal contribution because each individual contribution recorded did not exceed the $3,000 limitation. As a result, according to the State's theory, it was Owen's acts of concealment that prevented others from acquiring knowledge of the illegal contributions; thus, Owen's illegal acts caused the receipts and expenditures report made by the Hayden campaign to be a false writing pursuant to K.S.A. 21-3711.

The Campaign Finance Act is designed to prevent unscrupulous persons and organizations from contributing unlimited sums of money in order to obtain improper influence over candidates for elective office or to affect the outcome of elections.

The fact that a newspaper reporter, without the subpoena power of the inquisition, reported there were suspicious circumstances regarding the contributions does not indicate that the alleged illegal contributions could have been discovered when the campaign finance reports were received or made public. Though the paper trail exists, it may be a false trail to conceal the fact that Owen made illegal campaign contributions. Under the facts presented, the question of concealment is a matter of fact for the jury to determine. *State v. Taylor*, 140 Kan. 663, 667, 38 P.2d 680 (1934); see *State v. Wingett*, 136 Kan. 436, 16 P.2d 486 (1932); *State v. McGinley*, 129 Kan. 655, 284 Pac. 384 (1930).

The judgment of the district court is affirmed in part and reversed in part. Counts 5 and 8 through 18 of the complaint against David C. Owen are hereby reinstated and remanded to the district court for further proceedings. Count 1 of the complaint against John E. Palmer is hereby reinstated and remanded to the district court for further proceedings.