No. 55,960

STATE OF KANSAS, *Appellee,* v. LARRY BURTON, *Appellant.*

(681 P.2d 646)

Opinion filed April 27, 1984.

*John C. Chappell,* of Lawrence, argued the cause and was on the brief for the appellant.

*William P. Ronan,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Jerry L. Harper,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict finding Larry Burton (defendant-appellant) guilty of aggravated robbery as an aider and abettor (K.S.A. 21-3427 and K.S.A. 21-3205). The appellant contends (1) the evidence was insufficient to sustain the charge of aiding and abetting, (2) the jury was improperly instructed on the presumption of intent, and (3) he is entitled to a new trial.

On November 27, 1982, around 5:00 p.m., the Kizer-Cummings Jewelry Store in Lawrence was robbed at gunpoint by two black males and a black female. The jewelry taken was stuffed into the female robber's purse. The female robber also carried a plastic trash bag containing a hard object which she used to try to break the glass on one of the jewelry cases. After the robbery a trash bag with a rock in it was found on the floor of the jewelry store.

While the robbery was in progress a police officer patrolling the downtown shopping area pulled into a parking lot located behind the jewelry store and several other businesses. He noticed a car backed into one of the parking stalls with the lights on and the engine running. The officer's car was marked only with a city seal on the side. Because the car in the parking lot matched the description of a car sought in connection with an earlier shoplifting incident, the officer blocked it in with his car and got out to investigate. A black male later identified as the appellant got out of the car on the driver's side and asked if anything was wrong. The officer was not sure whether the appellant had been in the front or back seat. When the officer advised the appellant the car was illegally parked, the appellant said he was there to pick up a package. The officer told the appellant not to leave the

car parked that way for long and went to talk to another officer who had pulled into the parking lot. The officer then noticed the appellant walking in the alley behind the parking lot in the direction of the jewelry store. The officer estimated the car was parked 100 yards from the jewelry store. The car was parked facing the exit so it could be driven straight out of the parking lot onto the street. The officer thought the appellant appeared slightly nervous, but no more so than any person confronted by a police officer for parking illegally.

A few minutes later when the officer returned to police headquarters he heard the report of the robbery. A check of the parking lot behind the jewelry store confirmed that the illegally parked car was no longer there. A description of the vehicle and the four suspects was broadcast to other law enforcement personnel. Shortly thereafter, a highway patrol trooper spotted the getaway car coming from the direction of Lawrence on Highway K-10 in Johnson County. The patrolman followed the car for several minutes and, upon ascertaining that at least three black persons were riding in it, pulled the car over. The passengers were instructed to exit the car. The female passenger dropped her purse to the ground and it fell open, exposing numerous items of jewelry inside with price tags still attached. The four passengers of the car, including the appellant, were placed under arrest for aggravated robbery. When the car was later searched a large quantity of jewelry was found in a trash bag on the floorboard of the car. Price tags from the jewelry store were found strewn about the front of the car. A trash bag with a rock in it was found on the floorboard behind the front seat. The appellant was sitting in the back seat when the car was stopped.

The appellant maintained he knew nothing about the robbery until the car was stopped and he was arrested. He told officers nothing was said by anyone in the car about a robbery, nor had he seen a gun or any stolen property which led him to believe a robbery had been committed. The appellant testified that the day before the robbery he had travelled to Kansas City from St. Louis, where he lived, to look for a job. The day of the robbery he was walking near Interstate 70 looking for a ride. Lawrence Lane stopped and offered to give him a ride back to St. Louis. Lane and the appellant were not personally acquainted, but knew members of each other's families. Lane was accompanied by his

wife, Claudia, and her brother, Delvin Trotter. The three had travelled to Kansas City from St. Louis early the day of the robbery, ostensibly to check on a car. In Kansas City, Lane spotted the appellant walking along I-70. Lane stopped to talk to the appellant because he thought he knew him. Lane testified he told the appellant he would take him back to St. Louis, but first he had to pick up a package in Kansas, and the appellant could either go with them or they could pick him up on the way back to St. Louis. The appellant decided to go with them rather than wait.

The appellant testified he went to sleep in the car and did not wake up until they had arrived in Lawrence. After making a few stops to buy food and gas, Lane parked the car in the parking lot with the engine running and told the appellant to wait while he and the others went to pick up some packages. The appellant got out of the car when the police officer pulled up because he saw another marked police car also pull into the parking lot at about the same time and was curious about what was going on. He did not realize the first car that stopped was a police car until he saw the officer's uniform. After talking to the officer he walked into the alley behind the parking lot to see if he could find Lane or one of the others to tell them to move the car.

The three participants in the robbery all told the same basic story to police and at the appellant's trial. Lane maintained he alone planned the robbery and the other two did not know of his plans until they were walking to the jewelry store. Lane then forced his wife and brother-in-law to help him with the robbery. There was never any discussion concerning a robbery by the passengers in the car prior to when the car was stopped by police. Before the robbery Lane parked the car in the parking lot behind the jewelry store and told the appellant they were going to pick up some packages. He left the engine running because it was cold outside. When they returned to the car the appellant told them a police officer had said the car was illegally parked but did not issue a ticket or take down the license number. Lane said he did not tell the appellant what they were doing because it "wasn't none of his business." He also said he threw the gun out of the window after the robbery.

Various discrepancies in the stories told by the participants surfaced during trial. A detective who interviewed Lane after his

arrest testified Lane told him that after arriving in Lawrence they drove around for a while looking at jewelry stores before determining Kizer-Cummings would be the best to rob. Claudia Lane told the detective basically the same story. Claudia Lane testified at her own trial that after driving around Lawrence they stopped and purchased trash bags at a store. Her husband "fixed up" the trash bags with rocks in them and put one in the back seat by her brother and one in the front seat with her. He told her to empty her purse out in the car and put one of the trash bags in the purse. After the robbery she became scared and started asking what was going to happen to them when the highway patrol trooper began to follow them.

The appellant denied he knew anything at all about the robbery. He testified he did not hear any discussion of a robbery, he did not see Lane throw a gun out of the window, he did not see any jewelry in the front seat after the robbery, he did not hear Lane tell Claudia to dump her purse out in the car, and he did not see any trash bags in the car.

The appellant first contends the evidence was insufficient to establish that he intentionally aided and abetted in the commission of the aggravated robbery. In a criminal action, when the defendant challenges the insufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Pham,* 649, 667-68, 675 P.2d 848 (1984); *State v. Voiles,* 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979). In considering the sufficiency of the evidence, the appellate court looks only to the evidence in favor of the verdict; it does not weigh the evidence, and if the essential elements of the charge are sustained by any competent evidence the conviction must stand. *State v. Pondexter,* 234 Kan. 208, 211-12, 671 P.2d 539 (1983); *State v. Williams,* 229 Kan. 290, 296, 623 P.2d 1334, *reh. denied* 229 Kan. 646, 630 P.2d 694 (1981). The inquiry is not whether the court *itself* believes the evidence establishes guilt beyond a reasonable doubt, but rather whether the court believes *any* rational trier of fact could have found guilt beyond a reasonable doubt.

*State v. Douglas,* 230 Kan. 744, 745-46, 640 P.2d 1259 (1982); *State v. Hutton,* 232 Kan. 545, 550, 657 P.2d 567 (1983).

K.S.A. 21-3205(1) provides a person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime. It is the rule in this state that mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime are themselves insufficient to establish guilt as an aider and abettor; however, when a person knowingly associates himself with the unlawful venture and participates in a way which indicates he willfully is furthering the success of the venture, such evidence of guilt is sufficient to go to the jury. See *State v. Williams,* 229 Kan. at 661; *State v. Payton,* 229 Kan. 106, 111, 622 P.2d 651 (1981); *State v. McDaniel & Owens,* 228 Kan. 172, 178, 612 P.2d 1231 (1980); *State v. Wilson & Wentworth,* 221 Kan. at 367; *State v. Edwards,* 209 Kan. 681, 686, 498 P.2d 48 (1972).

The appellant contends no direct evidence was presented from which a reasonable inference of guilt could be drawn to support his conviction of aiding and abetting. This contention is based upon the fact the appellant and the other passengers in the car testified the appellant had no knowledge of the robbery. The appellant maintains his conviction can only be supported by "stacking" inferences entirely drawn from circumstantial evidence presented at trial. He argues the State's theory of the case required the jury to infer from his presence in the car that he knew about the robbery, and to infer from that knowledge that he intentionally participated in the robbery by acting as a lookout.

It is a basic principle of the law that presumptions and inferences may be drawn only from facts established and presumption may not rest upon presumption or inference on inference. *State v. Williams,* 229 Kan. at 649; *State v. Gobin,* 216 Kan. at 280; *State v. Doyle,* 201 Kan. 469, 488, 441 P.2d 846 (1968). What is meant by this rule is that an inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. *State v. Williams,* 229 Kan. at 649; *Farmers Ins. Co. v. Smith,* 219 Kan. 680, 689, 549 P.2d 1026 (1976). The rule has been stated another way—that while reasonable inferences may be drawn from the facts and conditions shown, they cannot be drawn from facts and conditions merely imagined or assumed. *State v. Williams,* 229 Kan. at 650.

It is also well established in this jurisdiction that even the gravest offense may be sustained by circumstantial evidence. *State v. Williams,* 229 Kan. at 296; *State v. White & Stewart,* 225 Kan. 87, Syl. ¶ 14, 587 P.2d 1259 (1978); *State v. Ritson,* 215 Kan. at 745. In *State v. Edwards,* 209 Kan. 681, Syl. ¶¶ 2, 3, it was held the element of intent necessary to establish guilt for aiding and abetting another to commit a crime may be inferred from the circumstantial evidence surrounding the perpetration of the crime and is a fact question for the jury to determine.

The appellant's contention that the evidence required the jury to infer that he intentionally participated in the robbery from the inference that he had knowledge of the robbery is without merit. The jury could infer from the facts and circumstances shown at trial that either the appellant did not know about the robbery and therefore was not guilty, or that he did know about the robbery and was guilty. The evidence at trial established that the appellant stayed with the getaway car and that he provided an explanation to the police officer for the illegally parked car. If the appellant had no knowledge of the robbery these acts were entirely innocent. However, as pointed out in *State v. Wilson & Wentworth,* 221 Kan. at 366, one who stays with the car, in which he knows the main participants in the crime plan to make their getaway, intentionally aids and abets in the commission of the crime and may be charged and convicted of the crime, although he did not participate at the scene of the crime. Therefore, if the appellant knew about the robbery, these acts established his intent to aid and abet in the commission of the robbery. The only inference which the jury was required to draw from the facts and circumstances presented by the evidence was whether or not the appellant knowingly associated with the unlawful venture. The second element necessary to establish guilt for aiding and abetting, that the defendant participate in a way which indicates he willfully is furthering the success of the venture, was established by uncontroverted facts.

Sufficient evidence was presented from which the jury could reasonably infer that the appellant knowingly associated himself with the unlawful venture. While the robbery was in progress the appellant waited in the getaway car. The car was backed into a parking stall facing an exit with the lights on and the engine

running. The appellant got out of the car when the police officer approached and advised the officer he was there to pick up a package and would not be there long. He was then seen walking in the alley behind the parking lot in the direction of the jewelry store. The appellant and his companions were apprehended a short time later. The loot from the robbery was found strewn about the front seat of the car. Part of the loot had been transferred from Claudia Lane's purse to a plastic trash bag. Trotter testified that while he was sitting in the back seat with the appellant he handed Claudia some gems he had taken in the robbery. A plastic trash bag containing a rock was found on the floorboard in the back seat, where the appellant was sitting when the car was stopped. Evidence was also presented that prior to the robbery Lane and his cohorts drove around Lawrence "casing" jewelry stores to determine which would be the best to rob. Lane bought some trash bags, put rocks in two of them, and placed one in the front seat and one in the back seat where the appellant was riding. Claudia Lane was instructed to empty her purse out in the car. Before they were apprehended Lane threw the gun used in the robbery out of the window of the car. The car was followed by the highway patrol trooper for several miles before it was stopped and the arrests were made. All four occupants were from St. Louis. Lane and the appellant were acquainted through their families.

From this evidence it was reasonable for the jury to infer that the appellant knew about the plans for the robbery prior to when it was committed. Although the appellant and his companions testified their meeting in Kansas City was merely by chance and the appellant had no knowledge of the robbery, the jury was absolutely free to reject this testimony. There was sufficient opportunity for the appellant and the others to agree, when it became apparent they were being followed by police, to testify that Lane had forced Claudia and Trotter to assist in the robbery and the appellant was an innocent passenger in the car. The facts and circumstances leading to the inference that the appellant knew about the plans for the robbery and knowingly associated with an unlawful venture were not merely imagined or assumed, they were established by the evidence at trial. Nor was the evidence upon which the inference was based so uncertain or speculative that it merely raised a conjecture or possibility of

guilt. The inference drawn by the jury logically followed from the evidence presented at trial.

The facts in *State v. Wilson & Wentworth*, 221 Kan. 359, are very similar to those in the instant case. The defendant Wilson challenged the sufficiency of the evidence to sustain his conviction of aiding and abetting in the robbery of a drugstore. Two men seen leaving the drugstore on foot were apprehended by police a short distance away, with the loot from the robbery thrown nearby. A car with an Oklahoma license tag was found parked a block from the drugstore in a parking lot so the license tag was obscured against a building. Wilson was found lying in the back seat. He disavowed any acquaintance with the two men apprehended by police and said he had become tired upon returning to Tulsa from Wichita so had "pulled over" to sleep. However, the town where the robbery occurred was over 36 miles from any highway connecting Wichita and Tulsa. All three men were from Tulsa. The defendant made a statement to police after his arrest indicating he was previously acquainted with one of the other men. On appeal the court held the evidence gave rise to a reasonable inference that Wilson knowingly associated himself with the unlawful venture and participated as the driver of the car, thereby intending to further the success of the venture.

In the instant case the circumstantial nature of the evidence forming the basis for the reasonable inference of guilt does not diminish its probative value. The defendant argues his conviction should be overturned because the evidence presented does not exclude every reasonable theory of innocence. He points to earlier cases from this court which held that where proof of the defendant's guilt was based substantially or entirely on circumstantial evidence an instruction should be given requiring that the jury be able to exclude every reasonable theory or hypothesis of innocence before finding the defendant guilty. See *State v. Wilkins*, 215 Kan. 145, 151-52, 523 P.2d 728 (1974), and cases cited therein. In *Wilkins* the court dispensed with the requirement, holding:

"The probative values of direct and circumstantial evidence are intrinsically similar and there is no logically sound reason for drawing a distinction as to the weight to be assigned to each. We believe that whatever type of evidence is introduced in a criminal trial (whether it be termed direct, indirect, testimonial, circumstantial or a combination) the trier of fact must apply the same test to

convict the defendant and if there is a reasonable doubt as to his guilt then the defendant should not be found guilty. This court now feels it is time to discard our former rule requiring a circumstantial evidence instruction to be given.

"A proper instruction on 'reasonable doubt' as applied to all kinds of evidence gives the jury an appropriate standard upon which to make a determination of guilt or innocence; to instruct further on the probative force of circumstantial evidence is to invite the confusion of semantics; and we disapprove statements to the contrary found in *State v. Skinner*, 210 Kan. 354, 362, 503 P.2d 168, *State v. Hale*, 207 Kan. 446, 450, 485 P.2d 1338, and in any other decision of this court contra to our holding in the instant case.

"We hold an instruction on circumstantial evidence, which cautions the jury that a defendant should not be found guilty unless the facts and circumstances proved exclude every reasonable theory of innocence or states that the jury cannot convict the defendant on circumstantial evidence unless the circumstances exclude every reasonable hypothesis of his innocence, is unnecessary when a proper instruction on 'reasonable doubt' is given; and we overrule *State v. White*, 211 Kan. 862, 508 P.2d 842, and all other decisions in which this court has required a special instruction on circumstantial evidence." 215 Kan. at 156.

See also *State v. Peoples*, 227 Kan. 127, 135, 605 P.2d 135 (1980); *State v. Costa*, 228 Kan. 308, 319, 613 P.2d 1359 (1980).

The defendant contends his testimony offered a reasonable theory of innocence which precluded the jury from finding him guilty based upon the circumstantial evidence presented. A reasonable doubt instruction was given in this case. The jury rejected the testimony presented by the appellant and his accomplices and concluded from the facts and circumstances established by the evidence that he had knowledge of the robbery. The evidence presented in this case was sufficient to form the basis for a reasonable inference that the appellant knowingly associated with the unlawful venture when viewed in the light most favorable to the State. This inference, coupled with the facts established by the evidence that the appellant stayed with the getaway car and concealed the true purpose for the illegally parked car from the police, sufficiently established that he intentionally aided in the commission of the robbery.

In a related issue the appellant contends the "presumption of intent" instruction given to the jury was improper under the evidence presented. The instruction given, essentially identical to PIK Crim. 2d 54.01, reads:

"Ordinarily a person intends all of the usual consequences of his/her voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met the burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

The presumption in criminal cases that a person intends the ordinary consequences of his acts is merely a rule to assist the jury in reaching its conclusion upon a question of fact, and is not a presumption of law. 29 Am. Jur. 2d, Evidence § 204. This court has said this instruction only establishes a permissive inference and does not create a burden-shifting presumption. *State v. Robinson, Lloyd & Clark,* 229 Kan. 301, 309, 624 P.2d 964 (1981); *State v. Egbert,* 227 Kan. 266, 267, 606 P.2d 1022, *cert. denied* 449 U.S. 965 (1980).

The appellant contends that aiding in the commission of a robbery is not the usual consequence of any of the appellant's actions proved by the evidence and therefore the instruction should not have been given. The appellant argues in his brief:

"It can hardly be maintained that facilitating a robbery is a usual consequence of sitting in a car at dusk with the engine and lights on. Nor can it be asserted that promoting a robbery is a usual consequence of talking to an officer because the car is illegally parked. . . . At most, one could argue that promoting a robbery is a usual consequence of voluntarily associating and remaining with a group of robbers, with knowledge that they are about to commit a robbery. Such an application stretches the rationale of the instruction, especially when knowledge of the robbery plan could only be inferred. No intent relevant to guilt can be inferred pursuant to this instruction from anything that Burton did, until other inferences are first made about his actions and involvement."

In other words, the appellant argues the instruction was not supported by facts established by the evidence, but merely by inferences drawn from that evidence. This instruction, it is argued, improperly allowed the jury to infer the appellant's guilty intent to aid in the success of the venture from the inferences upon which the instruction was based, that the appellant knowingly associated with the unlawful venture.

This argument is based in large part upon the appellant's contention that his conviction can only be supported by "stacking" inferences drawn from the evidence, which is not the case here. As it has been stated, the central issue of fact presented to the jury was whether the appellant had knowledge of the plans for the robbery. Once this finding was made the instruction permitted the jury to infer the appellant's intent to aid in the commission of the robbery from his voluntary acts of staying with the getaway car and providing the police officer who happened by with an explanation for the illegally parked car. These facts

were established by the evidence and provided a basis for giving this instruction. The instruction merely states the concept underlying the principle of law recognized in *State v. Wilson & Wentworth,* 221 Kan. at 366, that one who stays with the getaway car intends to aid in the commission of the crime, which is the usual consequence of such an act. It did not permit or require the jury to infer solely from its finding that the appellant had knowledge of the robbery that he also intentionally participated in the commission of the robbery, as the appellant implies. This court had held as many inferences may be drawn from a fact, or a state of facts, as it will justify, so long as each has a factual foundation, without violating the rule against inference based on inference. *Plains Transp. of Kan., Inc. v. King,* 224 Kan. 17, Syl. ¶ 3, 578 P.2d 1095 (1978); *Virginia Surety Co. v. Schlegel,* 200 Kan. 64, Syl. ¶ 5, 434 P.2d 772 (1967). Both the inference that the appellant had knowledge of the robbery and the inference that he intended to aid in the commission of the robbery by his voluntary act had a firm factual foundation in the evidence presented at trial. It was not error for the trial court to give this instruction.

Finally, the appellant contends he was denied a fair trial because he was restricted during voir dire examination and closing argument from attempting to explain the meaning of the reasonable doubt instruction and its applicability. This court has consistently adhered to the position that no definition could make the concept of "reasonable doubt" any clearer than the words themselves. *State v. Douglas,* 230 Kan. at 745; *State v. Costa,* 228 Kan. at 319. The trial court has broad discretion in controlling both voir dire and closing arguments. See *State v. Crouch,* 192 Kan. 602, 606, 389 P.2d 824 (1964); *Skelly Oil Co. v. Urban Renewal Agency,* 211 Kan. 804, 809, 508 P.2d 954 (1973). The trial court did not abuse its discretion in limiting this line of discussion. The appellant further argues his rights were prejudiced by the trial court's failure to excuse a juror, who worked in the media, who was familiar with the prosecutor and one of the police officers involved, and who had read a police report of the robbery shortly after it was committed. The juror indicated he remembered little about the case and believed he could be fair and impartial. The *State's challenge* of this juror for cause was denied by the trial court. The appellant did not raise any objec-

tion to the juror, did not challenge him for cause, and did not exercise a peremptory challenge to remove him. The appellant is in no position to complain that he was denied a fair trial due to the trial court's failure to discharge this juror. See *State v. Paxton,* 201 Kan. 353, 359-60, 440 P.2d 650, *cert. denied* 393 U.S. 849 (1968).

The judgment of the lower court is affirmed.