No. 69,902

STATE OF KANSAS, *Appellant*, v. BEATRICE MARTINEZ, *Appellee*.

(874 P.2d 617)

Opinion filed May 27, 1994.

*Mary A. McDonald*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with her on the brief for appellant.

*Jessica R. Kunen*, chief appellate defender, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case requires a focus on venue in the consideration of probable cause during a preliminary hearing.

Beatrice Martinez was charged with theft of a vehicle under K.S.A. 21-3701. A car stolen from a Wichita (Sedgwick County) parking lot was discovered on fire the next day in Harvey County. Martinez had been in the stolen car with another individual who confessed to having set it on fire. The district court dismissed the complaint against Martinez based on the absence of probable cause.

The State appeals the dismissal of the complaint. Our jurisdiction is under K.S.A. 1993 Supp. 22-3602(b)(1) (appeals may be taken to this court by the prosecution as a matter of right from an order dismissing a complaint, information, or indictment).

We conduct a de novo review of the evidence when considering the trial court's preliminary hearing probable cause finding. *State v. Starks*, 249 Kan. 516, 617, 820 P.2d 1243 (1991). The single issue is whether there was probable cause to believe Martinez had committed the crime of theft. We reverse the trial court and remand the case with directions to reinstate the charges.

## Facts

Law enforcement officers were at the scene of a burning abandoned car in Harvey County. A passing truck driver asked if the officers investigating the fire were looking for anyone. The driver had seen two people walking about a half-mile to the south. Beatrice Martinez and Scott Riener were picked up and returned to the location of the burning car.

The name on Reiner's identification card was Robert A. Sisler. Martinez, when initially questioned, stated that she had just come from visiting family. Riener (Sisler) and Martinez denied knowledge of the theft and fire and fabricated explanations for being in Harvey County.

A fireman asked if someone in the burning car had been wearing glasses. A deputy looked at Riener, who was wearing none. Eyeglass frames were recovered from the car and they appeared to match the glasses the deputy observed in the Sisler (Riener) identification photo. The car was identified as a stolen vehicle. Sisler was, in fact, Scott Riener.

Upon further questioning, Riener replied that he knew the story he told was not truthful. He said that he and Martinez had been at a club in Wichita when they were approached by a person known to him as "Wolf." Wolf gave him a set of car keys, saying that the car was stolen and that they could use it and then make it disappear. Riener stated that Martinez whispered "let's take the car and go to Wichita [Newton] to visit family friends." According to Riener, they were intoxicated. When they had driven beyond Newton, Riener turned the car around and the motor died. Riener could not start the car, so they abandoned it and commenced walking towards Wichita. They were arrested a short time later. Riener ultimately admitted that he set the car on fire.

Martinez said that she and Riener had left their Wichita residence around 10:30 p.m. Using the stolen car, which had been parked in front of their residence, they drove to four or five bars in Wichita. Riener told her they could use the car and that the car needed to disappear. She stated that they started driving toward Newton but thought they had gone too far and turned around. The car died, and Riener told her to start walking. Martinez admitted knowing the car was stolen and that Riener was going to set it on fire. She said that Riener had been the driver and that she did not know how to drive.

At the preliminary hearing, the State defended the Harvey County venue and requested that if the trial court did not agree, Martinez should be bound over on possession of stolen property. Riener was bound over on all charges. The trial court then reasoned:

"Now, I have a lot of problems, very frankly, with the case concerning Ms. Martinez. Now, it's clear to me that a version of events here, the State's version, will support the charge of aiding and abetting the—the act of possession of stolen property, but it is also clear to me that the one action that we know for sure she took was counseling Mr. Riener to do this down in Sedgwick County, because that apparently—the only testimony I have is that—that that statement was made down there in a club, apparently, in Sedgwick County. It's clear to me that Mr. Riener did something more to bring him within the ambit of the law, and that is when he crossed the county line into Harvey County he was operating the vehicle, and I'm buying the State's argument on that that that indicates that he did exert control over the vehicle. But no act of Ms. Martinez other than continuing to ride in the vehicle has been shown, no affirmative act of any kind has been shown tying Ms. Martinez to anything further with Harvey County. Now, maybe this is a continuing offense, as the State alleges, but, frankly, I think the evidence is just too slender for me to bind Ms. Martinez over and I'm dismissing Count II as to Ms. Martinez."

The trial court also found no probable cause to bind Martinez over on the possession of stolen property charge and ordered her released from custody.

### Applicable Statutes

K.S.A. 1993 Supp. 22-2902(3) requires that a defendant be bound over for trial if from the evidence presented at the preliminary hearing it appears a crime has been committed and there is probable cause to believe the defendant committed the crime.

We discussed the rules applicable to preliminary hearing probable cause bind-overs in *Starks*, 249 Kan. at 520.

K.S.A. 21-3701, the criminal theft statute, states, in part:

"Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property:

"(a)   Obtaining or exerting unauthorized control over property; or

. . . .

"(d)   Obtaining control over stolen property knowing the property to have been stolen by another."

K.S.A. 1993 Supp. 21-3110 provides definitions for terms in the criminal code. The pertinent definitions are:

"(1) 'Act' includes a failure or omission to take action.

. . . .

"(6) To 'deprive permanently' means to:

"(a) Take from the owner the possession, use or benefit of his or her property, without an intent to restore the same;

. . . .

"(11) 'Obtain' means to bring about a transfer of interest in or possession of property, whether to the offender or to another.

"(12) 'Obtains or exerts control' over property includes but is not limited to, the taking, carrying away, or the sale, conveyance, or transfer of title to, interest in, or possession of property."

The relevant venue statutes are:

K.S.A. 22-2609. "When property taken in one county by theft or robbery has been brought into another county, the venue is in either county."

K.S.A. 22-2607 relates to aiding and abetting:

"(1) A person who intentionally aids, abets, advises, counsels or procures another to commit a crime may be prosecuted in. any county where any of such acts were performed or in the county where the principal crime was committed.

"(2) A person who knowingly harbors, conceals or aids another person who has committed or has been charged with a crime with intent that such other person shall avoid or escape from arrest, trial, conviction or punishment for such crime, may be prosecuted in any county where any of such acts were performed or in the county where the principal crime was committed."

### · The State's Contentions

The State emphasizes Martinez' involvement as an aider and abettor, although it asserts that the preliminary hearing evidence sustains the bind-over as a principal.

Martinez exerted unauthorized control over the car as a principal by: (1) telling Riener to take the car; (2) riding in the car to go to clubs in Wichita; and (3) suggesting that she and Riener go to Newton to see her relatives. Martinez knew the car was stolen and rode in it to her advantage. Martinez admitted she knew Riener planned to burn the car.

Martinez was guilty, in the alternative, as an aider and abettor. Anyone who aids and abets in the commission of an offense may be charged, tried, and convicted in the same manner as any of the principals involved in the crime. K.S.A. 1993 Supp. 21-3205.

The facts support a finding that Martinez knowingly associated herself with the criminal enterprise and assisted in the furtherance of the criminal act. Martinez (1) told Riener to take the car when he was approached by Wolf so they could go visit her family; (2) said that Riener parked the car in front of their house; (3) stated that Riener told her they could use the car but that it would have to disappear; (4) acknowledged she knew the car was stolen and that Riener intended to set it on fire; and (5) used the car with Riener to go to clubs in Wichita and to Newton. These facts show that Martinez knew the car was stolen and would never be restored to its lawful owner. Martinez, by riding in the car, participated in permanently keeping the property from its owner. The fact that Martinez did not drive the car is irrelevant under the aider and abettor theory because she used the car to her transportation gain. Martinez intended to further the criminal enterprise when she initially was stopped by the officers and told them she had nothing to do with the car. Martinez volunteered no information about the car, nor did she try to extricate herself from her association with Riener by telling the officers that he had stolen and burned the car. Consequently, Martinez knowingly continued to cover up the criminal violations.

K.S.A. 22-2609 is the controlling venue statute. Venue for the aiding and abetting charge under K.S.A. 22-2607(1) is supported in that the unauthorized control and permanent deprivation of property elements started in Sedgwick County but ended in Harvey County. Martinez knowingly concealed and aided Riener with an initial cover story that was an attempt to mask Riener's cul-

pability for the crime, so venue also was proper under K.S.A. 22-2607(2).

## Martinez' Contentions

Martinez reasons that under K.S.A. 21-3701, theft may be charged in alternative ways. The State is alleging that she either (1) obtained or exerted unauthorized control over property, K.S.A. 21-3701(a), or (2) obtained control over stolen property knowing the property to have been stolen by another, K.S.A. 21-3701(d). The State's evidence shows that the car either was stolen by Wolf and given to Riener (the crime of receiving stolen property), or Riener stole the car himself (theft). The two crimes are mutually exclusive; one is either guilty of theft or of receiving stolen property, but not both. *State v. Alvarez*, 9 Kan. App. 2d 371, 373, 678 P.2d 1132, *rev. denied* 235 Kan. 1042 (1984).

If the car was stolen by Riener before he picked Martinez up, the theft was completed prior to her involvement. Consequently, the evidence did not support the theft charge under K.S.A. 21-3701(a). In the alternative, if the car was given to Martinez and Riener by Wolf in Sedgwick County, she was guilty of possession of stolen property in Sedgwick County under K.S.A. 21-3701(d). Martinez claims the crime of receiving stolen property must be prosecuted in the county in which the property allegedly was received, citing *Alvarez*, 9 Kan. App. 2d 371, Syl. ¶¶ 6 and 7. Harvey County lacked jurisdiction over the receiving stolen property offense.

Martinez relies on *State v. Palmer*, 248 Kan. 681, 810 P.2d 734 (1991), in asserting that theft is not a continuing offense. She reasons that the theft only occurred in Sedgwick County. The theft was completed when Riener stole the car. The car was driven into and removed from the parking lot by someone other than herself. She did not promote or assist in the crime. She cannot be held criminally responsible for theft because the crime was completed prior to when she came into contact with the car.

Martinez concedes that Riener could be charged with theft under K.S.A. 21-3701(a) in Harvey County. However, a defendant must have committed the theft in the first county in order to be charged with theft in the county where the property is taken. No

evidence suggests that she participated in the theft of the car from its original parking space. Consequently, she could not be charged with theft in Harvey County.

The evidence does not support the crime of obtaining control of stolen property under K.S.A. 21-3701(d). Even if her suggestion to Riener that they take the car constitutes intentionally obtaining control over stolen property, that crime occurred in Sedgwick County and may not be prosecuted in Harvey County.

The State improperly relied on the confession of her codefendant, Riener, citing *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). She could not cross-examine Riener because of his Fifth Amendment privilege. See K.S.A. 1993 Supp. 22-2902(3) (witness shall be examined in defendant's presence at the preliminary examination). The State lacks evidence to support either theft charge absent Riener's statements. Only evidence admissible at trial can properly be considered by the magistrate. The State relied on Riener's confessions to implicate her, *i.e.*, his statement that she suggested they take the car. This evidence was inadmissible and could not properly have been considered at the preliminary hearing. Martinez acknowledges that she did not object to the evidence at the preliminary hearing.

### Analysis

Martinez admitted she knew the car was stolen yet continued to ride in it to her benefit. She knew Riener planned to burn the car but did nothing. She assisted Riener in attempting to cover up the crime when she was interviewed by the police. The cover-up further points to her countenance and approval of the crime.

If from the facts and circumstances surrounding Martinez' presence at the time and from her conduct it appears that her presence did in fact encourage Reiner to commit the act, guilt may be inferred. See *State v. Smolin*, 221 Kan. 149, Syl. ¶ 1, 557 P.2d 1241 (1976). Martinez provided evidence that she encouraged the criminal activity and failed to take steps to oppose Riener's actions. Her Fifth Amendment argument, appearing for the first time on appeal, is not persuasive. She did not object to the police officer's testimony concerning Riener's confession.

Additionally, her reliance on *Bruton* is misplaced. *Bruton* involved a jury trial of codefendants Evans and Bruton. A postal inspector testified that Evans confessed to him that Evans and Bruton committed the armed robbery. The trial judge instructed the jury that although the confession was competent evidence against Evans, it was inadmissible hearsay against Bruton. The confession was to be disregarded in determining Bruton's guilt or innocence. The Supreme Court reversed, holding that "we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all." 391 U.S. at 137. The jury trial stage has not yet arrived in the case at bar. The constitutional protections afforded by *Bruton* will be available to Martinez if she is tried as a codefendant. There is no constitutional right to allow the accused to confront witnesses against the accused at the preliminary hearing. See *Gerstein v. Pugh*, 420 U.S. 103, 121-23, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975); *State v. Sherry*, 233 Kan. 920, 929, 667 P.2d 367 (1983). Martinez' counsel did cross-examine the detective who related Riener's confession.

We have repeatedly held that "[o]ne who stays in a car, in which he [or she] knows the main participants in the crime plan to make their getaway, has been held to intentionally aid and abet in the commission of the crime." *State v. Huff*, 235 Kan. 637, 641, 681 P.2d 656 (1984). See *State v. Burton*, 235 Kan. 472, Syl. ¶ 5, 681 P.2d 646 (1984). Martinez can be viewed as an aider and abettor of the theft under the application of *Huff* and *Burton*. Additionally, Martinez also can be viewed as having participated in the venture in such a fashion as to further its success. See *State v. Green*, 237 Kan. 146, 149, 697 P.2d 1305 (1985); *State v. Gardner*, 10 Kan. App. 2d 408, 417, 701 P.2d 703, *rev. denied* 237 Kan. 888 (1985). She actively participated in the cover-up of the crime.

With regard to the venue question, we recently considered the proper venue for aiding and abetting in connection with drug trafficking and possession of controlled substances. *State v. Chapman*, 252 Kan. 606, 847 P.2d 1247 (1993). Chapman was pros-

ecuted in Ottawa County, a county the car containing the drugs was driven through by two involved individuals, Porter and Heberly. Chapman was not in the car. Chapman had passed the drugs on to Porter at an Oklahoma truck stop. Chapman argued that venue was improper. The State claimed that when Porter and Heberly received the drugs from Chapman in Oklahoma, he could have been charged in any Kansas county through which the pair drove on the way to their destination in Cloud County. We concluded that the drug trafficking was a continuing offense committed in each county Porter and Heberly traveled through in reaching their destination; consequently, venue in Ottawa County was proper. 252 Kan. at 614. Guidance for resolution of the instant case is provided by *Chapman's* observation that "[t]he defendant's participation, not the commission of the substantive offense, is the act which constitutes aid to the principal." 252 Kan. at 614.

We have held that theft is not a continuing offense. *Palmer*, 248 Kan. 681, Syl. ¶ 2; *State v. Gainer*, 227 Kan. 670, 608 P.2d 968 (1980). We choose, however, to characterize theft under the venue statute as a "traveling offense." See K.S.A. 22-2609. Consequently, with regard to the theft allegation under K.S.A. 21-3701(a), venue was proper in either county if Martinez is, in fact, determined to be an aider and abettor. This is true even if the aiding and abetting occurred in Sedgwick County.

Martinez' reliance on *Palmer* is misplaced. *Palmer* is a statute of limitations case. We rejected Martinez' continuing offense argument in *State v. Freitag*, 247 Kan. 499, 502, 802 P.2d. 502 (1990) (A bicycle stolen in Missouri surfaced at a triathlon in Kansas. Jurisdiction of a felony theft charge under K.S.A. 21-3701[a] was in Kansas. Venue was established by K.S.A. 22-2610, which indicates that when the theft occurs in another state the trial is in the county where the property is recovered.). We stated in *Freitag*,"As pointed out in *Gainer*, the continuing offense doctrine arises in statute of limitations questions and has only limited application therein. There is no statute of limitations issue in the case before us and the continuing offense doctrine has no application." 247 Kan. at 502. No statute of limitations question is

before us in the case at bar. The continuing offense doctrine is not at issue. The broad view advocated by Martinez concerning the fact that theft is not a continuing offense would render the K.S.A. 22-2609 venue statute useless.

Martinez relies on *Alvarez* as support for her arguments concerning venue and receiving stolen property. *Alvarez* reasoned:

"When the charge was receiving stolen property, the common law placed venue in the county where the property was received. 22 C.J.S., Criminal Law § 185 (22), p. 483; *State v. Rider*, 46 Kan. 332, 26 Pac. 745 (1891).

. . . .

"K.S.A. 22-2609 is simply a statutory statement of the general rule that a charge of larceny may be prosecuted in the county where the theft occurred, or in any other county into which the thief has brought the property. That statute was not intended to expand that general rule by allowing one to be prosecuted for receiving stolen property in any county other than that where the property was allegedly received." 9 Kan. App. 2d at 374-75.

The Court of Appeals' conclusion concerning the application of K.S.A. 22-2609 is not supported by any authority. K.S.A. 22-2609, a venue statute, applies to all of the acts of theft set out in K.S.A. 21-3701. The holding in *State v. Alvarez*, 9 Kan. App. 2d 371, to the contrary is disapproved. The consolidated theft statutes, K.S.A. 21-3701 *et seq.*, were part of the 1970 Kansas Crimes Act passed by the legislature in 1967, with a July 1, 1970 effective date. See Wilson, *Thou Shalt Not Steal: Ruminations on the New Kansas Theft Law*, 20 Kan. L. Rev. 385 (1972), for a discussion of consolidation of theft statutes. K.S.A. 22-2609 was enacted as part of the Kansas Code of Criminal Procedure during the 1970 legislative session. The prior statute, K.S.A. 62-407 (Corrick), referenced "burglary, robbery, larceny or embezzlement" in place of "theft." We conclude that when the legislature used the term "theft" in K.S.A. 22-2609, the venue statute, it intended the term to have the meaning defined by K.S.A. 21-3701 in the criminal code adopted three years earlier. We presume the legislature acts with full knowledge and information concerning the subject matter of a statute, including prior and existing legislation. *Szoboszlay v. Glessner*, 233 Kan. 475, 480, 664 P.2d 1327 (1983). K.S.A. 22-2609 applies to all of the acts of theft set out in K.S.A. 21-3701. Venue for the receiving stolen property charge could either be in Sedgwick or Harvey County.