NOT DESIGNATED FOR PUBLICATION

No. 121,045

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JORGE LUIS GARCIA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; WENDEL W. WURST, judge. Opinion filed July 1, 2022.
Affirmed.

*Kristen B. Patty*, of Wichita, for appellant, and *Jorge Luis Garcia*, appellant pro se.

*Tamara S. Hicks*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and
*Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., HURST, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: Jorge Luis Garcia asks this court to reverse his convictions for rape,
aggravated kidnapping, and two counts of aggravated criminal sodomy. In his pro se
brief, Garcia raised four alleged errors warranting reversal, including that the State failed
to present sufficient evidence to support each of his convictions. In later briefing, his
appointed appellate counsel raised three of the same errors—but failed to include Garcia's
claims of lack of sufficient evidence. This court addresses all four arguments and finds

1

that none of the claims constitute reversible error. This court affirms each of Garcia's convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2017, J.D.-Z. met Jorge Luis Garcia through Facebook, where they corresponded for a couple of months, which turned into daily telephone calls; they eventually met in person at J.D.-Z.'s residence where Garcia met her children. The two began a romantic relationship, and Garcia would stay with J.D.-Z. a couple days a week and she started calling Garcia her boyfriend. But a couple months after their relationship began, J.D.-Z. and Garcia got into an argument over the phone about accusations that Garcia was seeing other women.

In late August 2017, J.D.-Z. got into an argument with her mother—who she and her four children were living with in Liberal, Kansas—and was asked to move out. That evening, J.D.-Z. took her oldest child to his grandfather's house and planned to take her other children to Wichita but decided to stop in Garden City to visit Garcia on the way. Shortly after arriving in Garden City, Garcia told J.D.-Z. that they were going to his friend Gilbert's house—a trailer located somewhere near the Garden City area. While at Gilbert's home, J.D.-Z. remained in the living room with her children while Gilbert and Garcia went to a separate room to talk. When Garcia returned to the living room he told J.D.-Z. that she and her kids could stay at Gilbert's house. J.D.-Z. was initially uncomfortable with the arrangement, but she agreed because she thought it meant Garcia wanted to be closer to her. Garcia then asked J.D.-Z. if she knew anyone that wanted an entertainment stand and if she would help him move it. He did not initially tell her where it was located. J.D.-Z. agreed to help move the stand, and Garcia suggested she leave her children with Gilbert, but J.D.-Z. was not comfortable leaving them and brought them along. Garcia, J.D.-Z., and the children went to an abandoned trailer in J.D.-Z.'s vehicle, where J.D.-Z. told the kids to wait in the car while she and Garcia moved some furniture.

2

Once inside the trailer, J.D.-Z. and Garcia started moving the entertainment stand from the bedroom until it was wedged in the bedroom doorway. Garcia then went into the living room and retrieved items from the bag that he brought with him, returned to the bedroom, and zip tied J.D.-Z.'s hands behind her back. J.D.-Z. later testified that Garcia told her that he was going to teach her a lesson for making him angry the night before. J.D.-Z. began to panic and cry, and Garcia responded by telling her to shut up and that no one could hear her scream. He then put a plastic bag over her head and left the room. While alone in the room, J.D.-Z. managed to get the bag off her head and continued to cry; her hands remained bound. Garcia soon returned and began pulling J.D.-Z.'s pants off while she pleaded with him to stop. But he did not. Instead, Garcia cut off her shirt, bra, and underwear with a boxcutter. He then rolled J.D.-Z. onto her stomach and anally and vaginally penetrated her with the handle of a plastic paintbrush and whipped the back of her legs with a plastic hanger. Throughout this torrent of assault and abuse, J.D.-Z. continued to plead with him to stop, reminding him that her children were in the car. Garcia responded by threatening to kill her and said he would sell her children on the black market.

Garcia then raped her anally, vaginally, and orally. Garcia used a condom and lubrication but told J.D.-Z. that it was going to take him a long time to ejaculate because he was "doped out." J.D.-Z. continued to cry throughout the attack; she recalled: "I was hysterical. I felt horrible. I felt scared. I was not in control of the situation at all. I was just worried about my kids." After Garcia finished sexually abusing J.D.-Z., he told her that he cared about her and was going to let her live. Garcia then cut off the zip ties that were binding J.D.-Z.'s hands, gave her a sweater to put on, and they left the trailer. He later told J.D.-Z. that he was sorry, that he just wanted to teach her a lesson, and that he loved her.

In the following days, J.D.-Z. did not immediately report the attack; and she ended up staying with Garcia and her children at Gilbert's trailer for the next week. J.D.-Z.

3

testified that she did not want to report him because she loved him, and he had never acted like that towards her before and she wanted to try to work things out. But J.D.-Z.'s sister eventually convinced her that the incident should not have occurred and that she should report him—about a week after the attack, J.D.-Z. finally did so.

After being interviewed by several law enforcement officers, J.D.-Z. went to the hospital for a SANE/SART examination in the early morning hours of August 29. Due to the amount of time that had passed, a full exam to collect evidence was not possible, which upset J.D.-Z. and she refused a full genital examination—but her injuries were documented and photographed. J.D.-Z. told the SANE/SART nurse that her genitals were not hurt because Garcia had used a lot of lubricant. However, J.D.-Z. still had bruises on her arms and legs from being struck with the clothes hanger as well as cuts on her back and breasts from the box cutter that Garcia had used to cut off her clothes. She also had ligature marks on her wrists from the zip ties. J.D.-Z. returned to the hospital later that day because she was experiencing some pain and having trouble going to the bathroom.

Several police officers later searched the trailer where the assault had occurred and found cut-up underwear, a bra cut in half, cut zip ties, hangers, a paintbrush, a used condom, and various other articles of clothing and bedding. Some of these items were sent to the Kansas Bureau of Investigation for DNA analysis. None of the items had Garcia's semen on them, but his DNA was found on the condom. J.D.-Z.'s DNA was found on the condom, the zip ties, and the sheets. The analysis of the paint brush did not reveal any DNA.

The State charged Garcia with two counts of rape, three counts of aggravated criminal sodomy, and aggravated kidnapping. Garcia proceeded to trial where, after hearing the evidence, the jury could not come to a unanimous decision and the district court declared a mistrial. At the second trial, Garcia testified in his own defense to his version of events. Garcia did not deny that he and J.D.-Z. had sex in the trailer, and he

4

admitted to putting her in zip ties, hitting her with the hanger, and cutting off her clothes with the box cutter. But he contended that the encounter was a fantasy of J.D.-Z.'s and just a part of a dominant/submissive sexual relationship. He further denied sodomizing J.D.-Z. with the paintbrush. This time the jury found Garcia guilty of one count of rape, one count of aggravated kidnapping, and two counts of aggravated criminal sodomy, and acquitted him of the remaining charges.

The district court sentenced Garcia to 620 months' imprisonment with lifetime postrelease supervision. Garcia appeals.

DISCUSSION

Garcia raises four arguments on appeal through two different briefs—one filed through counsel and one pro se. In his pro se brief, Garcia alleges the State failed to present sufficient evidence to support each of his convictions. His counsel alleges (1) the district court erred by giving a preliminary instruction that allegedly diluted the State's burden of proof; (2) the court erred by failing to issue a sua sponte limiting instruction about his alleged methamphetamine use; and (3) that cumulative error deprived him of his right to a fair trial.

I.      *Garcia's convictions are supported by sufficient evidence.*

Garcia contends the State failed to present sufficient evidence to support his convictions for rape, aggravated kidnapping, and aggravated criminal sodomy. Garcia's main assertion is not that the State failed to show that the bondage, sexual intercourse, and sodomy occurred—in fact, he readily admits that it did—rather, he argues the encounter was consensual and that the State failed to prove otherwise.

5

When a criminal defendant challenges the sufficiency of evidence supporting their conviction, an appellate court reviews all the evidence in the light more favorable to the State and determines whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). "[T]here must be evidence supporting each element of [the] crime." *State v. Kettler*, 299 Kan. 448, 471, 325 P.3d 1075 (2014). This court looks only to evidence supporting the verdict and will uphold a conviction so long as it is sustained by any competent evidence, including circumstantial evidence, so long as "it permits the factfinder to draw a reasonable inference regarding the fact(s) in issue." *State v. Banks*, 306 Kan. 854, 859, 397 P.3d 1195 (2017); *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015) ("'A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference.'").

In his pro se brief, Garcia contends only that the State failed to prove J.D.-Z.'s lack of consent. He attempts to poke holes in the State's case by asking this court to reweigh the evidence and draw its own circumstantial inferences to find that the evidence did not support his convictions. But that is not this court's role—this court defers to the jury's factual findings by reviewing all the evidence in a light more favorable to the prosecution. *Chandler*, 307 Kan. at 668. So long as there was *some* evidence presented to support every element of Garcia's convicted offenses—this court must uphold his convictions. See 307 Kan. at 668; *Kettler*, 299 Kan. at 471; *State v. Burton*, 235 Kan. 472, 476, 681 P.2d 646 (1984) ("[I]f the essential elements of the charge are sustained by any competent evidence the conviction must stand.").

Garcia was convicted of rape in violation of K.S.A. 2017 Supp. 21-5503, which required the State to prove that he knowingly engaged in sexual intercourse with J.D.-Z. *without her consent* and while she was overcome by force or fear or was unconscious or physically powerless. Garcia was also convicted of two counts of aggravated criminal

6

sodomy under K.S.A. 2017 Supp. 21-5504, which required proof that he engaged in sodomy with J.D.-Z. *without her consent* or engaged in sodomy with J.D.-Z. while she was overcome by force or fear or was unconscious or physically powerless. Finally, Garcia's conviction for aggravated kidnapping under K.S.A. 2017 Supp. 21-5408 required the State to prove that he took or confined J.D.-Z. by force, threat, or deception with the intent to hold her to facilitate the commission of a crime and that bodily harm was inflicted upon J.D.-Z. as a result. The only element of these crimes that Garcia claims the State failed to prove is J.D.-Z.'s lack of consent to his actions.

At trial, Garcia took the stand in his own defense and testified that the sexual intercourse and sodomy did occur, that he restrained J.D.-Z. with zip ties, whipped her with a hanger, and cut off her clothes with a box cutter. But he maintains that all those actions were consensual and that his version of events was more credible than J.D.-Z.'s. He further argues that J.D.-Z. made up the claim that they were in a relationship, and the jury should therefore have disregarded the remainder of her testimony. Garcia also points to J.D.-Z.'s delay in being examined at a hospital and her hesitancy to have a SANE/SART examination as evidence that her testimony was implausible. However, the jury heard all the evidence Garcia musters—his argument is merely a plea for this court to reassess witness credibility and reweigh evidence in his favor.

In her harrowing account of Garcia's attack, the details of which she testified to at length, J.D.-Z. plainly stated that she did not consent to any of Garcia's sexual acts or sodomy which were forced upon her. The jury was presented with all the evidence and arguments from both Garcia and the State, weighed the testimony, and determined the credibility of the witnesses. The fact-finder's role is to hear the testimony of the witnesses, sort matters of credibility, and weigh the evidence. And this court has no reason to believe that the jury did not perform those functions here. Ultimately, when a defendant challenges the sufficiency of the evidence supporting a conviction, they must do more than simply imploring this court to reweigh the evidence and reassess witness

credibility in their favor. *Chandler*, 307 Kan. at 668. Given the facts and circumstances before the jury, the evidence was legally sufficient to support all of Garcia's convictions beyond a reasonable doubt.

II.     *The district court did not err in giving the jury its preliminary instructions.*

Next, Garcia argues the district court diluted the State's burden of proof when it read the preliminary instructions to the jury. Garcia contends that the court erred when it stated—as part of the elements of the offenses of rape and aggravated criminal sodomy—that the State had the burden to prove that J.D.-X. "did not consent" to the sexual intercourse or sodomy.

This court follows a three-step process in evaluating errors alleged in jury instructions:  (1) determine if the issue is properly preserved and whether this court has proper jurisdiction; (2) determine whether an error occurred; and (3) if an error occurred, determine whether it requires reversal. *State v. Crosby*, 312 Kan. 630, 638-39, 479 P.3d 167 (2021). Because Garcia did not make a contemporaneous objection to the preliminary instruction, this court reviews the preliminary instruction for clear error. *State v. Tahah*, 302 Kan. 783, Syl. ¶ 5, 358 P.3d 819 (2015). An instruction is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. K.S.A. 2021 Supp. 22-3414(3); *State v. Williams*, 308 Kan. 1439, 1451, 430 P.3d 448 (2018). Garcia carries the burden to show the necessary prejudice. See *Crosby*, 312 Kan. at 639. However, this court need not reach the reversibility issue if it determines challenged preliminary instructions were legally and factually appropriate. *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018).

As part of its preliminary jury instructions, the district court informed the jury, in relevant part:

8

"In this case the defendant is charged with six crimes . . . . The defendant pleads not guilty to each charge. To establish these charges each of the following claims must be proved beyond a reasonable doubt by the State of Kansas as to each count of the Complaint.

"In counts one and two the defendant is charged with rape. To establish each charge of rape the State must prove the defendant knowingly engaged in sexual intercourse with [J.D.-Z.], *who did not consent to the sexual intercourse . . . .*

"In counts three, four, and five the defendant is charged with aggravated criminal sodomy. To establish each charge of aggravated criminal sodomy the State must prove the defendant intentionally, knowingly, or recklessly engaged in sodomy with [J.D.-Z.], *who did not consent to the sodomy . . . .*" (Emphases added.)

Garcia argues inclusion of the italicized language shifted the State's burden because the district court told the jury that "it was undisputed that [J.D.-Z.] did not consent to the sexual encounter." He contends these instructions constituted structural error because the court "removed from the jury its responsibility to find beyond a reasonable doubt each element of five of the six crimes charged." This argument apparently stems from the comma placement and/or failure to include the phrase "the State must prove" a second time.

Here, the challenged instructions were factually appropriate because Garcia was charged with rape and aggravated criminal sodomy. Accordingly, providing the jury with preliminary instructions outlining the elements of those offenses was warranted under the circumstances. Although Garcia cursorily contends the instructions were factually inappropriate, he does not belabor this point—instead, he focuses his argument on the legal appropriateness of the instructions. The phrasing of the preliminary instructions did not tell the jury that it was undisputed that J.D.-Z. did not consent to the sexual intercourse or sodomy. Rather, they informed the jury that the State was required to prove both that the acts occurred, and that J.D.-Z. did not consent to the sexual intercourse or

9

sodomy. Moreover, the testimony plainly demonstrated that consent was a disputed factual issue in the case.

The challenged instructions accurately stated the applicable law regarding both rape and aggravated criminal sodomy. As noted above, both offenses require the State to prove beyond a reasonable doubt that the victim did not consent to the sexual intercourse or sodomy—the instructions tracked the applicable statutory language. See K.S.A. 2021 Supp. 21-5503; K.S.A. 2021 Supp. 21-5504. Additionally, the preliminary instructions track with the language utilized in the Kansas pattern jury instructions. PIK Crim. 4th 55.030 (requiring the State to prove victim "did not consent to sexual intercourse"); PIK Crim. 4th 55.070 (requiring State to prove victim "did not consent to sodomy"). See *State v. Wimbley*, 313 Kan. 1029, 1031, 493 P.3d 951 (2021) ("[I]f a court follows the PIK instructions, more than likely the instruction will be legally correct, not because of any independent legal significance of the pattern instruction, but because the committee usually writes an instruction that accurately reflects the law."). Considering the language Garcia complains of—which informed the jury that the State was required to prove beyond a reasonable doubt that J.D.-Z. did not consent to the sexual intercourse or sodomy—precisely follows both the statutory language and the PIK, the instructions were legally appropriate. Although the district court did not numerically list the elements of the charged offenses in its preliminary instructions, the court did not remove the element of consent from the jury's consideration by its comma placement and stating that "the State *must prove* the defendant knowingly engaged in sexual intercourse with [J.D.-Z.], who did not consent to the sexual intercourse" or that "the State *must prove* the defendant intentionally, knowingly, or recklessly engaged in sodomy with [J.D.-Z.], who did not consent to the sodomy." (Emphases added.)

Because the preliminary instructions were factually and legally appropriate, no error occurred. This court need not proceed to the reversibility step of the clear error analysis. See *McLinn*, 307 Kan. at 318 (explaining that reversal for an unpreserved claim

of instructional error requires both a showing that an error occurred and that the jury would have reached a different verdict if it had not). However, even assuming some confusion from the phrasing of the preliminary instruction—Garcia has not shown clear error. There is no real possibility the jury would have rendered a different verdict in the absence of the complained-of language as both parties plainly placed the issue of J.D.-Z.'s consent prominently before the jury throughout the case and in the final jury instructions. Garcia's argument to the contrary is meritless.

III.    *The district court should have given a limiting instruction regarding Garcia's alleged drug usage, but its failure to do so does not compel reversal.*

Garcia next argues that the district court erred by sua sponte failing to give a limiting instruction for certain testimony about his alleged methamphetamine use on the night of the attack. Garcia did not seek to prevent the introduction of this evidence prior to trial, or contemporaneously object to the admission of this evidence at trial. Nor did he request a limiting instruction at trial. Accordingly, he contends the district court committed clear error when it failed to give the jury a limiting instruction explaining the specific purpose for which the evidence was admitted.

The Kansas Supreme Court has held that a defendant may challenge a district court's failure to give a limiting instruction regardless of whether they objected to the admission of the evidence that is the subject of the instruction. *State v. Breeden*, 297 Kan. 567, 582-83, 304 P.3d 660 (2013). Under such circumstances, this court determines "whether the failure to give a limiting instruction was clearly erroneous." 297 Kan. at 583; see *State v. Molina*, 299 Kan. 651, 655, 325 P.3d 1142 (2014) (applying clear error standard to defendant's challenge to district court's failure to give an unrequested jury instruction). To establish clear error in this situation, the court must first determine whether there was any error at all. An error occurs if an unlimited review of the record demonstrates that giving the proposed instruction would have been both legally and

11

factually appropriate. *State v. Burnett*, 300 Kan. 419, 445, 329 P.3d 1169 (2014). If the court finds an error, it then must decide "whether it is 'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *Williams*, 308 Kan. at 1451. Garcia has the burden to establish clear error, and this court examines the record de novo to determine if he has met this burden. See *State v. Gentry*, 310 Kan. 715, 721, 449 P.3d 429 (2019).

The evidence that Garcia alleges mandated the giving of a limiting instruction was a police officer's testimony that J.D.-Z. recalled Garcia told her that he was "doped out and that it could take a while for him to ejaculate." The officer further explained that he had asked J.D.-Z. what "doped out" meant, and she replied that Garcia had been smoking methamphetamine. On appeal, Garcia does not challenge the admissibility of this evidence but argues the district court's failure to give a limiting instruction led the jury to conclude that because he allegedly used drugs he had the propensity to commit the alleged crimes or crime in general. See *State v. Butler*, 307 Kan. 831, 860, 416 P.3d 116 (2018) ("The purpose of a limiting instruction is to 'eliminate the danger that the evidence will be considered to prove the defendant's mere propensity to commit the charged crime.'"). The State is prohibited from using "evidence that a person committed a crime or civil wrong on a specified occasion . . . to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." K.S.A. 2021 Supp. 60-455(a).

To determine if an error occurred, this court must question whether the evidence that Garcia was allegedly "doped out" qualifies as generally prohibited evidence pursuant to K.S.A. 60-455, which would trigger the need for a limiting instruction. *Breeden*, 297 Kan. at 581 ("[A] trial court is to instruct the jury on the specific purpose for admission 'whenever 60-455 evidence comes in.'"). The district court did not make any of the usual relevance inquiries, nor any particularized weighing of probative value and prejudicial effect that would normally accompany the admission of K.S.A. 60-455 evidence.

12

Accordingly, it is not clear what, if any, material fact Garcia's alleged drug use was relevant to prove. However, it is likely that the evidence was admitted as circumstantial evidence to explain why the KBI did not find Garcia's semen on certain items from the scene—rather than as propensity evidence against Garcia. Despite the lack of objection from Garcia and analysis preceding the admission of the testimony, Garcia's alleged methamphetamine use preceding the attack qualifies as evidence of crimes and other civil wrongs. Therefore, a limiting instruction was legally and factually appropriate. The State does not contest that the district court's failure to provide a limiting instruction constituted error, instead proceeding directly to its contention that the error does not require reversal.

As noted above, this court only reverses for clear error if it is "firmly convinced that the jury would have reached a different verdict had the instruction error not occurred." *Williams*, 295 Kan. 506, Syl. ¶ 5. The impact of the omitted instruction is viewed in light of the entire record including the other instructions, counsel's arguments, and whether the evidence against defendant is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015); *State v. Widener*, No. 122,591, 2021 WL 4127735, at *5 (Kan. App. 2021) (unpublished opinion), *petition for rev. filed* October 8, 2021. Garcia contends that people perceive those who are using methamphetamine as out of control and therefore the officer's testimony that J.D.-Z. said Garcia had been smoking methamphetamine made the jury more prone to believe he engaged in the heinous conduct he was charged with. Here, the officer's testimony was early in the trial and was not emphasized by either party. The officer's testimony had no bearing on the elements of the charged or convicted offenses—Garcia was not on trial for drug crimes. The trial centered around J.D.-Z.'s recount of the attack and whether she consented to the sexual encounter —Garcia's alleged use of methamphetamine did not bear on that question. The district court's error of not giving a limiting instruction does not constitute clear error. Moreover, when considering the potential impact of the officer's statement against the totality of the evidence supporting Garcia's guilt, it cannot

13

be reasonably said that the presence of a limiting instruction would have made any difference in the verdict.

IV.    *The cumulative error doctrine is inapplicable.*

Finally, Garcia argues cumulative error deprived him of his right to a fair trial. This court analyzes a claim of cumulative error under a de novo standard. *State v. Ross*, 310 Kan. 216, 227, 445 P.3d 726 (2019). If there is no error or only a single error found, there is no error to accumulate and therefore no basis to reverse a conviction. See *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018); *State v. Haberlein*, 296 Kan. 195, 212, 290 P.3d 640 (2012). Here, Garcia has failed to apprise this court of any errors requiring reversal or more than one nonreversible error—the cumulative error doctrine is not applicable.

Affirmed.